J. W. WRIGHT, Appellant, v. THE E. M. DICKEY COM-
PANY AND THE SIBLEY LOANING COMPANY,
Intervener, Appellees.

Landlord's Lien: CROPS: INNOCENT PURCHASER: ESTOPPEL. Where a landlord, having a lien for the rent of farm lands upon crops grown upon the premises, permitted the crops to be harvested and carried to market, and there sold to a purchaser without notice of his

lien, in reliance upon the tenant paying him the rent out of the proceeds, *held*, that the landlord was estopped from asserting any claim to the crop sold as against such purchaser.

*Appeal from Lyon District Court.*—HON. G. W. WAKEFIELD, Judge.

FRIDAY, OCTOBER 16, 1891.

THE plaintiff brought this action March 8, 1889, to recover of the defendant the value of two hundred bushels of wheat upon which the plaintiff claimed to have a landlord's lien, and which he alleges was wrongfully converted by the defendant to its own use, and that it refused to return or pay for the same, wherefore he asks judgment. The defendant denies that it converted the wheat as alleged; denies that the plaintiff had a landlord's lien thereon; and alleges that, if he ever had, the same had expired, and that he had waived his lien. The intervener alleges that it held a chattel mortgage on the wheat, and asks judgment against the defendant for the value thereof. The case was tried to the court, and a judgment entered dismissing the plaintiff's petition as against the defendant, and that the plaintiff pay forty-four dollars and sixty cents costs; also that the plaintiff's petition be dismissed as to the intervener, and that intervener recover from the defendant one hundred and eighty-five dollars and twelve cents and thirty-one dollars and sixty cents costs. The plaintiff alone appeals.—*Affirmed.*

*D. D. McCallum*, for appellant.

*J. D. F. Smith* and *O. J. Clark*, for appellees.

GIVEN, J.—I. The following facts appear without question: In the winter of 1887–88 the plaintiff agreed verbally with one S. H. Irwin to lease to him a certain seventy acres of land described, and afterwards, on

March 24, 1888, the lease was made in writing. The lease is of the seventy acres, "with all the improvements thereon, and all the privileges and appurtenances thereto belonging, for the season of 1888, for the sum of one hundred and forty dollars, payable as follows: On or before November 1, 1888." There is a further provision "that the said S. H. Irwin will keep in good repair, and do all the fall plowing in the fall of 1888." Irwin took possession, and raised a crop of wheat on the land, which he cut and stacked in the early part of August, and threshed late in September or early in October. Immediately after threshing, Irwin commenced hauling wheat to market, and sold about two hundred bushels thereof to the defendant at the town of George, receiving one hundred and eighty-one dollars and ten cents therefor; and another part thereof to Mr. Sauer, a grain buyer, from whom he also received payment. On February 15, 1888, Irwin executed a chattel mortgage to the intervener, which was filed for record the next day, and is upon "all the crops that I shall grow and raise this year on the eighty acres," describing the same lands as in the lease from the plaintiff. Immediately upon marketing the wheat Irwin fled the country without paying the plaintiff any part of the rent due except twenty dollars, and without fall plowing the seventy acres, and also without paying the intervener. The plaintiff alleges and claims that the wheat was sold by Irwin without his knowledge or consent. This is denied by the appellees, and they maintain that the plaintiff's lien, if he ever had one, had expired, and that he is estopped from asserting a lien, because of having knowingly permitted Irwin to sell the wheat as he did.

II. We first inquire as to the plaintiff's case against the defendant. The only material fact that is controverted is whether the plaintiff knew that Irwin was hauling the wheat to market and selling it at the

time he did.    The plaintiff testified as follows:    "I do not know what became of the wheat.    I just discovered he had hauled the grain away in the morning after he left,—about nine o'clock in the morning in October;" and again:    "I did not see Irwin haul away the wheat. I did not see him pass my house with any grain.    I knew nothing about his hauling the grain off."    Two other witnesses, who were present at the bin from which the wheat was hauled during part—and probably the greater part—of the time Irwin was hauling it, testify that they did not see the plaintiff there any of the time.    Mr. Crele, general agent of the defendant, testified as follows:    "In the spring of 1889, I said to Wright, 'Did you know the time Irwin harvested the wheat?'    He said he did.    I said:    'I should think you would have been looking after your interest there.    You know he did not have anything but wheat there.'    He said:    'I had all confidence in the world in him.    I thought when he got the money for the wheat he would pay me.'    I said:    'Didn't he pay you any part?'    He said:    'No, sir.    He ran away in the night.'    'Did you know. he hauled this to George?'    'Yes.'    'How do you know?'    'I saw him haul it in that direction.    He sold some to Rock Rapids, and some to Ashton, but most of it went in that direction.'    'Why didn't you stop him?'    'Because I thought he would pay me as soon as he got the money.'    I says, 'You had confidence in him and thought he would straighten up with you?'    He said he did.    I says:    'Well, if you knew he was hauling it to George, after he hauled it, why did'nt you notify our agent at George that you had a mortgage on it, and that you would hold us responsible?'    He said: 'I thought the Dickey Company was good for it.'"    A. N. Reed, an employe of the defendant, who was present, corroborates Mr. Crele as to what was said in this conversation.    The plaintiff was not afterwards recalled, and does not deny having had such a conver-

sation.  Upon this state of the testimony the district court was certainly warranted in finding that the plaintiff knew that Irwin was hauling off and marketing the wheat at the time he did.  It is a familiar principle that, where one of two innocent parties must suffer for the wrongful act of another, the one who rendered the wrongful act possible must bear the burden.  Concede that the plaintiff had a landlord's lien upon the wheat in full force, he would have prevented injury to himself or the defendant by asserting or making known that lien when he knew the wheat was being sold to an innocent purchaser.  We are satisfied that the plaintiff's confidence in Irwin was such that he relied upon his paying the lien out of the money which he would receive for the wheat,—a confidence which was not well placed; and it is because of this misplaced confidence that one or the other of these parties must lose. It was the plaintiff who trusted Irwin, and it is he whom Irwin deceived, and he must bear the consequences of the deception as between himself and the defendant.  It follows from this view that the judgment of the court dismissing the plaintiff's petition as to the defendant, and charging the plaintiff with part of the costs, and also the judgment dismissing the petition as to the intervener, must be affirmed.

It is unnecessary, therefore, that we notice in this opinion the questions discussed as to whether the plaintiff's lien had expired and whether he had waived the lien.  Some questions are made upon the rulings of the court in taking testimony, but we discover no error in the rulings.  As the plaintiff alone has appealed, we are not called upon to consider as to the judgment in favor of the intervener and against the defendant.

The judgment of the district court as to the plaintiff is AFFIRMED.