## J. W. GARNER, et al., Appellants, v. JOHN W. FRY, et al.

**General Assignment:** FILING CLAIMS. A verified notice filed with an assignee in insolvency, that one is the owner of a chattel mortgage on the property assigned, giving date, amount, and rate of interest, describing the notes secured by the mortgage, and stating that the entire amount is due and upaid, amounts to a claim, under Code 1873, section 2120, requiring the facts to be fully stated and verified.

**OPTIONAL CLAIM BY MORTGAGEE** The court having power to protect all liens and priorities by appropriate orders in the distribution of money derived from the sale of an assignee's property, it is optional with the mortgagee whether he will accept such protection or enforce his lien.

**SAME:** *Waiver.* A chattel mortgagee who presents her claim to an assignee for creditors of a mortgagor, and allows the mortgaged property to remain with the assignee for over two years, and a portion of it to be sold by him under the direction of the court waives her right to foreclose, and must look to the assignee and the courts to protect her preference by virtue of the lien of her mortgage.

**Fraudulent Conveyance:** SALE OF DOWER: *Gifts.* An indebtedness from a husband to his wife, will sustain a chattel mortgage by the former to the latter, as against his creditors, notwithstanding that the indebtedness arose from a loan to him of money which she exacted from him as a cond tion of her executing a conveyance of their homestead, and which he consented to allow her at a time when he could make a valid gift to her.

104 515
107 62

104 515
114 491

104 515
120 331
122 184
122 283

104 515
j125 128
104 515
128 123
104 515
130 284

104 515
e132 611

FAILURE TO RECORD. The withholding a chattel mortgage from the record in pursuance of an agreement to that effect, does not affect its validity as to pre-existing creditors.

Appeal. Where an appeal is taken from a judgment sustaining a mortgage, and also from a subsequent order denying an injunction restraining foreclosure of such mortgage, a motion to strike out the latter appeal, as in no way connected with the main case, will be overruled, as there is nothing in the rules prohibiting printing two appeals under one cover.

*Appeal from Van Buren District Court.*—HON. F. W. EICHELBERGER AND HON. M. A. ROBERTS, Judges.

WEDNESDAY, JANUARY 26, 1898.

THE plaintiffs are creditors of John W. Fry, who made an assignment, February 3, 1894. He executed a mortgage to his wife, January 1, previous, securing the payment of three thousand dollars, and this action was brought to set aside such mortgage as fraudulent. Decree for defendants, and plaintiffs appeal. Thereafter the plaintiffs applied for an order restraining Mrs. Fry from foreclosing her mortgage, and they also appeal from an order denying such relief. Judgment sustaining mortgage *affirmed.* Order denying injunction *reversed.*

*Mitchell & Sloan, Work & Lewis,* and *Wherry & Walker* for appellants.

*McCoid & McCoid* for appellees.

LADD, J.—The important question presented relates to the execution of a mortgage by Fry to his wife, securing the payment of two notes of one thousand, five hundred dollars each. The facts are somewhat peculiar. When married, in 1876, both were without means other than necessary to begin housekeeping. In 1888 there was owing her one hundred and ten dollars

for millinery and household goods sold in Kansas, for which he gave her a due bill. In 1890 he sold thirty acres of land, the title to which was in her name, and executed to her a note of six hundred dollars in payment therefor. In 1892 he had arranged to exchange their homestead and some other property to one Stuart for a farm, which he had in turn sold to Pearson. She refused to sign the deed without having first been paid one-half of the proceeds derived from the sale. This was finally agreed to, the deed signed, and left with a justice of the peace, who was to retain the amount, but, upon its receipt, handed it to Fry, who paid it over to his wife. Thereafter Fry traded for a store building, residence, and stock of goods in Leando, paying therefor in horses and money. He borrowed one thousand, eight hundred dollars of his wife, with which to purchase goods and use in his business, and as security, agreed that the deed of the real estate be made to her. A few days after the deed was so drawn, however, the commercial agencies at Keokuk and Burlington wrote to a notary, Morrison, inquiring if Fry had conveyed his property to his wife. Morrison showed these communications to Fry, and informed him that having the real estate in his wife's name would injure his credit. He then advised Fry and wife that, instead of the deed, he execute to her a mortgage on the stock of goods, and that, by withholding this from record, his credit would not be injured, and she would be fully secured. The deed was made to him and he agreed to give her a mortgage on the merchandise. But there is no evidence of an understanding that the mortgage should be withheld from record, nor is there any that its execution be delayed till the store was filled up with goods bought on credit. True, she said she would not have taken a mortgage at that time. Then there were few goods in the store, as she explains, and she might well wait till those for the purchase of which he borrowed

the money were placed on the shelves. That she repeatedly demanded the execution of the mortgage, and was put off by him, cannot be doubted, if their undisputed testimony is to be credited. In August she loaned him seventy dollars, and in October three hundred and seventy-five dollars, received from the sale of land in her name, and he owed her one hundred and thirty-two dollars for produce taken by her on sales of millinery goods, as she conducted a shop in one part of the store. These amounts make up a little more than the three thousand dollars, for which the two notes were given, and to secure which, he executed the mortgage in controversy, January 1, 1894. This was not placed on record till February 2, following, but the indebtedness to plaintiffs had been contracted prior to its execution. For this reason the case does not come within the rule announced in *Goll & Frank Co. v. Miller*, 87 Iowa, 426, and *Falker v. Linehan*, 88 Iowa, 641. Besides, no agreement not to record is shown. It is insisted the mortgage was dated back. This is only a suspicion, and the evidence is to the contrary. Before this Fry had been paying considerable amounts on his indebtedness, and, if it be conceded that he did not act in good faith, there is nothing in the record to indicate that his wife participated in any fraudulent purpose or was put on inquiry with reference thereto. It does show, however, that she was keen in the care and protection of her own interests, and inclined to overreach her husband in their business transactions.

II. It might well be urged that the one thousand, eight hundred dollars was obtained from Fry by his wife without consideration. This is true. While the statutes of this state confer on married women the largest freedom in contracting, they stop short of that interest in the husband's property with which the wife is endowed for the protection and well-being of the family. She cannot convey it, as a

seprate and independent interest, to a third party. *McKee v. Reynolds,* 26 Iowa, 578; *Dunlap v. Thomas,* 69 Iowa, 358.   Nor can she convey it to her husband. *Linton v. Crosby,* 54 Iowa, 478; *In re Lennon's Estate,* 58 Iowa, 760; *Shane v. McNeill,* 76 Iowa, 459.   The inchoate dower interest may be released, but not bargained and sold. *Reiff v. Horst,* 55 Md. 42.   The statute is not limited to conveyances, but is extended to all contracts. "When property is owned by either the husband or wife, the other has no interest therein which can be the subject of contract between them.   *   *   *" Code, section 3154. This evidently refers to the interest arising from the marriage relation, such as dower, or homestead, and not that derived from some other source. *Baxter v. Hecht,* 98 Iowa, 531.   It is the policy of the law to foster and protect family unity and harmony, and for this purpose the contingent interest of the husband or wife in the other's property is created, though not such as may, in any event, become the subject of barter and sale between them.   In all their dealings each must treat the property of the other as his own, and never pervert the inchoate interest therein as a means of private gain.   Either may elect whether he will join in a conveyance, but is precluded from using the right for the purposes of speculation or oppression.   The statute is intended to serve the double purpose of shielding the contingent rights of the one against the fraud or imposition of the other, and guarding against the possibility of selfish calculation and unjust exactions and interferences of the one in the management and control of the other's estate.   See *Miller v. Miller,* 104 Iowa, 186.

III.   But Fry paid this money voluntarily.   While his wife took advantage of the situation, he was not compelled to convey the property.   It seems well settled

that, where money is voluntarily paid, with full knowledge and without duress, no recovery can be had. 1 Parsons, Contracts (6th ed.), 489; *Forbes v. Appleton,* 5 Cuch. 117; *Rutherford v. McIvor,* 21 Ala. 750; 2 Greenleaf, Evidence, section 123, and notes. The transaction was in the nature of a gift, and, after its completion, in the absence of fraud or mistake, Mrs. Fry became as absolutely the owner of the money as though received for a consideration the law recognized as valid. This being true, she could loan it or use it for any lawful purpose. It appears all the indebtedness of Fry existing at that time has been paid, and the transaction was not had in view of creating any other. Undoubtedly the circumstances are to be considered, in connection with others, as bearing on the charge of fraud, but we think the evidence fully warrants the conclusion that the money was paid Mrs. Fry in good faith, and without any thought of acting with the purpose of defeating future creditors. The conclusion of the district court is supported by the evidence, and is affirmed.

IV. After the action just considered had been determined, and an appeal perfected, Mrs. Fry proceeded to foreclose her mortgage, and the plaintiffs presented a petition to Hon. M. A. Roberts, one of the judges of that district, praying that she be enjoined from so doing. From an order denying such relief they appeal. The appellee moves to strike this portion of the abstract, because in no way connected with the main case. It is an independent action, but the rules do not prohibit printing two appeals under one cover. The parties were practically the same, and the cases separately abstracted and argued. No prejudice has resulted. The motion is overruled. This petition sets out all the proceedings and orders in the matter of the assignment of Fry for the benefit of his creditors, and based the prayers for relief on the ground that the

right of Mrs. Fry, to foreclose her mortgage, had been waived and adjudicated. On May 1, 1894, she filed a paper, in these words, with the assignee:

"To James Elerick, assignee of J. W. Fry: You are hereby notified that I, Sadie H. Fry, have a chattel mortgage on the entire stock of merchandise included in the assignment of J. W. Fry, for the sum of three thousand dollars, at six per cent. interest from Jan. 1, 1894. I hold two promissory notes, for $1,500 each, drawing six per cent. interest, secured by chattel mortgage, and the entire amount is due and unpaid. Sadie H. Fry." This was duly verified, and reported by the assignee among the claims filed. Objections to the report of the assignee having been made, hearing was set for the November term, 1895, and the assignee and Mrs. Fry cited to appear for examination. Both appeared personally and by attorneys, and the court, on the twenty-ninth of the month, entered an order adjusting the assignee's accounts, and that he proceed "to dispose of all the property remaining in his hands as assignee, and will advertise the same for sale, and proceed at once to sell and dispose of the same at either public or private sale, in bulk or by retail, as will best subserve the interests of the estate," and provided for the approval of the court or judge. Mrs. Fry excepted, but took no appeal from this order. On December 12 following, the assignee called the court's attention to a notice received from her December 2, saying the paper heretofore referred to was not filed as a claim, but as a notice of the existence of the mortgage. The decree in The action begun July 18, 1894, declaring the mortgage valid, was entered March 11, 1896, and on June 14, Mrs. Fry began the foreclosure of her mortgage. The facts have been somewhat fully set out, because they clearly indicate Mrs. Fry had no right to enforce her lien on the merchandise by advertisement and sale. The assignee took the stock subject to her mortgage, and

charged with notice of its existence. No other notice was required. The paper filed could serve no purpose other than that of a claim against the estate, and it was so treated by the assignee. The particular form was not material. It is sufficient that the facts were fully stated and verified. Code 1873, section 2119. She allowed the property to remain with the assignee two years and four months, and nearly one-half to be sold under the direction of the court. The assignee was ordered to sell the balance of the merchandise at a hearing to which she was a party. This order was absolutely inconsistent with the right to foreclose, and she cannot be permitted to ignore it. The court has ample power to protect all liens and priorities by appropriate orders in the distribution of moneys derived from the sale of the assignor's property, and it is optional with the mortgagee whether he will enforce his lien against the property or rely on the protection thus afforded. If he choose the latter remedy, he may not thereafter foreclose, because, in doing so he waives such right. By filing her claim, and alleging her right to preference, and allowing the assignee to retain possession, and manage and control the property, under the direction of the court, Mrs. Fry elected to look to the assignee for the satisfaction of the debt owing her. This was doubtless the ground on which the court proceeded in making the order of sale. The plaintiffs are creditors interested in the estate, and entitled to maintain the action. The only question determined in the main case was the validity of the mortgage. Here the right to foreclose is the issue. We conclude the temporary writ of injunction should have been granted, and the order denying it REVERSED.