J. M. HODGES, Appellee, v. TRANS-MISSISSIPPI GRAIN CO., Appellant.

**Landlord and tenant:** ACTION FOR RENT: DESCRIPTION OF PREMISES: VARIANCE IN PROOF. Land formed by accretion becomes a part of the tract to which it adheres. So that evidence in an action for the value of grain sold by a tenant, tending to show that it grew in part on land formed by accretion, though described in the lease and for the purposes of taxation separately, was competent under a petition describing only the original tract as the land leased.

**Same:** SALE OF GRAIN: LIABILITY OF PURCHASER. The fact that a purchaser of crops from a tenant, upon which the landlord had a lien for rent, had no notice of the landlords lien will not affect his liability to the landlord for the value of the grain purchased.

**Same.** Although a tenant may have told his landlord that he had sold grain from the leased premises and received and disposed of the proceeds, though in fact untrue, the landlord was not thereby estopped from asserting his lien against the purchaser because of failure to notify him of his rights; especially as there was no evidence that the landlord knew the statement was untrue, or knew that the tenant contemplated the sale of the grain.

*Appeal from Woodbury District Court.*—HON. WM. HUTCHINSON, Judge.

Thursday, October 23, 1913.

Action by a landlord for the value of grain purchased from his tenant on which the landlord claimed a lien.— *Affirmed.*

*O. D. Nickle,* for appellant.

*Martin Neilan,* for appellee.

Gaynor, J.—It appears that on or about February, 1910, plaintiff herein leased to one John J. Frisbie land described as follows: Lot 1, tax lot 1, section 36-88-48, in Woodbury county, Iowa, containing 88.06 acres more or less, for a term commencing March 1, 1910, and ending March 1, 1911; that the lessee, Frisbie, agreed to pay as rent therefor, $176 on the 1st day of September, 1910, and $176 on the 1st day of October, 1910. It appears that Frisbie took possession of this land under the lease and farmed the same for the farming season of 1910, and raised on said land wheat and corn and other farm products; that he has paid as rental the sum of $70 only, leaving a balance due on said rent, at the time this action was commenced, of $282. It appears that the said Frisbie sold certain corn raised on said premises to the defendant herein as follows: On December 7, 1910, corn to the amount of $8.85; on December 10, 1910, corn to the amount of $12.40; on December 30, 1910, corn to the amount of $121.00; on December 31, 1910, corn to the amount of $13.55— amounting in all to $155.80. Plaintiff brings this action against the elevator company, defendant herein, to recover the value of the corn so purchased by the defendant company from his tenant, Frisbie, claiming that he had a landlord's lien on the corn, so sold to the defendant, at the time it was sold, and that the defendants wrongfully purchased and converted the corn to their own use. The defendants pleaded that, if the plaintiff had a lien on said corn, so purchased by

it, at the time of the purchase, defendant had no notice or knowledge of that fact; that plaintiff had full knowledge of the sale or intended sale to them of the corn, not later than December 19, 1910, and failed to take any steps whatever to enforce his rights as landlord, or to notify the defendants of such rights, and they did not learn of the plaintiff's right in the corn until February 3, 1911. The defendants further say that they did not pay to Frisbie the purchase price of the corn for at least ten days or two weeks after the plaintiff had acquired knowledge of the fact that Frisbie had sold the corn to these defendants, and that he took no steps to notify the defendants of his rights, and made no demand upon them for the purchase price of the corn. Upon these issues, the cause was tried to the court without a jury, and judgment was entered for the plaintiff for $155.80, and from this judgment the defendants appeal.

The plaintiff in his petition seeks to recover from the defendants the amount of corn sold by Frisbie to the defendants which was raised on lot 1, 36-88-48. The lease describes the land as lot 1, tax lot 1, 36-88-48. The evidence tends to show that some of the corn was raised on tax lot 1. At the conclusion of all the testimony, the defendants moved to strike all testimony introduced, with regard to corn purchased by the defendants, that was raised on tax lot 1, for the reason that it was irrelevant to any issue tendered. This motion was overruled, and of this ruling complaint is made.

1. LANDLORD AND TENANT: action for rent: description of premises: variance in proof.

It appears that lot 1 is the original description of the land owned by the plaintiff in section 36-88-48; that tax lot 1 is an accretion to lot 1, and is described as tax lot 1, for taxing purposes only. The land described as tax lot 1, being an accretion to lot 1, is therefore a part and parcel of lot 1, and is properly included in the description lot 1. Tax lot 1 is simply a description of a part of lot 1, that part which is accretion to lot 1, made for taxing purposes only. Therefore the description lot 1 includes that which is an accretion

to lot 1, to wit, what is called in the lease tax lot 1.   There was no error, therefore, in the ruling, of the court.

It is next contended by the appellant that the defendant was an innocent purchaser of this corn without notice of the defendant's rights in the corn, or to the corn, 2. SAME: sale of grain: liability and had no notice that the plaintiff had a of purchaser. landlord's lien on the corn at the time it was purchased. · This fact is not controlling even if. it were true.

In *Evans v. Collins,* 94 Iowa, 432, which was an action at law to recover for the conversion by the defendant of certain oats upon which the plaintiff claimed a landlord's lien, the court in passing upon that case said:

The only question we have, then, is whether there is sufficient testimony to support the plaintiff's case.  .  .  . The court was justified in finding from the testimony that Quine did lease the land from plaintiff, as claimed; that he raised more than five hundred bushels of oats thereon, which he sold to the defendant, who knew, at the time he purchased them, that they had been grown upon plaintiff's land; and that the defendant converted and appropriated the same to his own use.   There was no testimony, however, that the defendant knew that the rent was not paid, or that there was any lien upon the property.   The court may also have found that neither plaintiff nor his agent had any notice or knowledge that the defendant was disposing of the property.   Under such a state of facts, plaintiff's right to recover is clear. .  .  . It is contended on behalf of appellant that he did not know the grain was raised upon plaintiff's land, that he did not know Quine was a tenant of any one, and that he is an innocent purchaser of the oats, for value.   If it be conceded his contention is correct, yet it does not follow that he can   escape   liability.   This   exact   question  .  .  . was decided in *Richardson v. Peterson,* 58 Iowa, 724.

In the last case cited, there was a controversy between a landlord and one who had purchased a team of horses from his tenant, while the rent money remained unpaid.   The court, in passing upon the case, said:

We are required to determine whether the landlord's lien, held by the plaintiffs was divested by the sale of the

horses to the intervener. . . . The lien given by the statute is a charge upon the property of the tenant specified, to secure the rent due under the lease. It attaches to the property and cannot be defeated by the sale or removal thereof. If it could be defeated in that way at the option of the tenant, the security would be worthless, and the purpose of the statute to protect the landlord would be defeated. . . . If a statute creating a lien provides for no protection in favor of persons having no notice thereof, property subject thereto cannot be transferred, free of the lien, on the ground that the purchaser has no notice of its existence. Unless these principles be recognized, the lien conferred by the statute . . . would fail to give protection to the landlord.

See, also, as bearing upon the same question, *Wright v. Dickey,* 83 Iowa, 464; *Frorer v. Hammer,* 99 Iowa, 48; *Blake v. Counselman,* 95 Iowa, 219.

*Blake v. Counselman, supra,* is a case very much in point. It appears, in that case, that the defendants were grain buyers at the town of Callender; that the tenant delivered to the defendants, at their warehouse in Callender, certain grain at various times during the month of February. It was delivered in single loads; each load delivered by itself, and settled for as delivered; and that every bushel of grain delivered had been paid for by the defendant, to the tenant, by the 15th day of February, 1892. The defendants had no actual notice that this grain was raised upon leased premises, or that the tenant selling the grain was a tenant of the plaintiff, or that plaintiff had any lien upon the grain. On the 18th day of February, of the same year, the plaintiff demanded of the defendants a settlement for the corn. It appeared from the evidence that the plaintiff had visited the farm, on which the corn was grown, in November preceding the sale, and saw the tenant husking the corn in the field. The plaintiff knew that the tenant had sold and delivered almost the entire crop of oats raised by him that season upon the place and had appropriated the proceeds. They made no attempt to investigate or look up the oats, and gave no directions to the tenant

as to the disposal of the corn, and made no inquiry as to his disposal of the same. It appeared that about the 18th of February, 1892, the entire rent was unpaid practically. The court in disposing of the case said: "The corn being upon the demised premises, the plaintiffs' lien did extend to all of it, including that sold to the defendant, and, under the decisions" of this court, "the defendants are liable to the plaintiffs for the value of the corn in question, unless the plaintiffs waive their lien or are estopped by the facts from now asserting it. We do not think there is anything in the facts as certified showing a waiver of their lien by the plaintiffs, or that should estop them from now asserting it."

The case now under consideration is clearly distinguishable from the case of *Wright v. Dickey*, 83 Iowa, 464. In that case it affirmatively appears, from the record, that the landlord saw the tenant hauling the corn; knew he was disposing of it and to whom; made no objection, relying in confidence upon the tenant to deliver to him the proceeds of the corn when sold, in payment of the rent; and gave to the purchasers no notice of any claim against them until after the tenant had run away and left his rent unpaid.

In this case, the first notice the plaintiff had touching any sale or disposal of the corn in controversy was on the 17th day of December, when the tenant came to him and said that he had sold the corn and had taken the money and paid a note at the bank at that time. He said that he had paid the money to the bank in order to enable him to have credit there. It does not appear that the plaintiff knew that this statement was untrue, or that he knew that the defendant was then contemplating the sale of this corn. This statement, touching what was said by the tenant to the plaintiff concerning the sale of the corn, is strongly corroborated by the testimony of the tenant touching this same transaction; and his subsequent conduct, as shown in connection with his statements, made to Sargent, manager of the defendant elevator, to the effect that Sargent should

3. Same.

not tell any one about the sale of the corn, or show the books, or tell the amount of money paid for the corn.

We think the evidence fails to show any fact upon which the defendants can predicate an estoppel, and, under the law hereinbefore stated, the judgment of the district court is right and is *Affirmed*.

WEAVER, C. J., and WITHROW and DEEMER, JJ., concur.