EMMA J. MARTIN, Appellant, v. FARMERS LOAN & TRUST COMPANY, Appellee.

**DESCENT AND DISTRIBUTION:** Surviving Husband or Wife—Dower—Waiver by Division of Property—Estoppel. A fair, equitable and *executed* agreement between husband and wife, preceding a marital separation, for a complete division of property, in such manner as to free the portion of each spouse from all possible dower right of the other, and, therefore, to enable each spouse to thereafter individually handle and dispose of his or her respective portion without regard to the other spouse, estops both parties, *immediately upon the execution of such agreement*, from thereafter enforcing a claim for dower in the property of the one first deceased. In such case, nothing appearing to indicate a change of purpose, no act of either, *subsequent to the execution of the agreement*, can work a reinvesting of dower right in the other. Sec. 3154, Code, 1897.

PRINCIPLE APPLIED: Just preceding the marital separation of a wife, who was in poor health, and her husband, who was 74 years of age and quite feeble, they determined on a division of their accumulated property, which consisted of 160 acres of land, in the husband's name, and some personal property. The wife was the husband's second wife. The husband had children by both his wives. Both parties sought, by the division of property, to so divide that the portion of each would be

absolutely freed from all future possible dower claims of the other.

To accomplish this division, they *jointly* conveyed the land to a trust company, by two separate deeds covering separate 80-acre tracts. In these deeds, the wife released all "dower, homestead or distributive share." The trust company, in writing, acknowledged that it held one specified 80 solely for the wife and the other solely for the husband, and agreed to handle and dispose of the wife's 80 as she might direct, and the husband's 80 as he might direct. The wife also received, at a nominal rental, a year's lease of the husband's 80, and, later, received all the personal property possessed by the parties. The parties were in debt, and each obtained a loan, secured the same on their respective 80's, and delivered the amount to the trust company, which agreed to pay the debts and divide the surplus equally between the husband and wife. The wife, a few days later, became dissatisfied with the arrangement by which the trust company was to hold *her* 80, and the deed of her 80 to the bank was cancelled, and a deed to the wife's 80 was made directly to the wife's son. This conveyance was manifestly for the sole benefit of the wife. Two insurance policies existed on the life of the husband. It was arranged, some days after the deeds to the trust company were executed, that one policy should pass to the wife and one to the husband's estate; but, before the wife would agree to the latter, she made further demands to the effect that the husband, at his death, should leave $1,000 to her own children. The husband acceded to this.

*Two weeks after the said deeds were executed*, the husband and the trust company, without the wife's being in any manner a party thereto, entered into an agreement by which the trust company agreed: (a) To pay to the husband the net income of his 80; (b) to sell the property if the income was not sufficient to care for the husband; (c) to keep the balance, in case of sale, on interest; and, (d) after the husband's death, and the payment of the funeral expenses, and a reasonable compensation to the trustee, to pay $1,000 to the wife's children, and the balance to the husband's children by his first wife.

The value of the respective portions received by each does not appear, but the division was concededly fair to the wife and free of any fraud.

Neither party thereafter did anything to undo the division. The husband died some three months later. The wife then claimed dower in the husband's 80.

*Held*, (a) she was estopped, *when the deeds were executed*, to assert such claim; and (b) neither the acknowledgment of the

trust company that it held the land solely for the husband, nor the *subsequent* execution of the trust agreement with the husband, had the effect of reinvesting the wife with a dower interest.

*Appeal from Plymouth District Court.*—WILLIAM HUTCHINSON, Judge.

TUESDAY, JUNE 26, 1917.

THIS is an action in equity, in which plaintiff seeks to have set off to her a distributive share, or dower, in certain land transferred to the defendant by deed in which plaintiff and her deceased husband joined, and in which plaintiff relinquished her dower interest. Defendant asked to have its title quieted as against plaintiff's claim. After a trial on the merits, the trial court held that plaintiff was not entitled to dower, and dismissed her petition and gave defendant a decree. The plaintiff appeals.—*Affirmed.*

*C. A. Plank* and *C. E. Gantt,* for appellant.

*Shull, Gill, Sammis & Stilwell,* and *R. H. Burton Smith,* for appellee.

PRESTON, J.—The general situation, in

DESCENT AND
DISTRIBUTION:
surviving husband or wife:
dower: waiver by division of property: estoppel.

so far as we think it applicable to points presented, is substantially this, as set out by appellant in her statement of facts:

That the plaintiff was married to Wilson B. Martin, now deceased, 24 years ago; that, at that time, deceased had 5 children by a former marriage, who are still living—one of these is Frank Martin; plaintiff and deceased had 3 children, all now living, one of whom is Dwight. That, at about the time of their marriage, they purchased 80 acres of land, referred to in the record as "the home 80," and also "the west 80;" a year or so afterwards, they purchased another 80 acres, referred to in the record as "the hill 80" and "the east 80;" a part of

the purchase price was taken care of by a mortgage, which was finally paid off by defendant, and under the agreement in which the transfer of the land in suit was made to the defendant. In May, 1909, deceased executed a deed to plaintiff, in which he attempted to convey the 160 acres before described. This was subject to a $2,000 mortgage on the property, the payment of which plaintiff assumed. At the time of the execution of some of the instruments hereinafter referred to, June 2, 1915, plaintiff had not been well, and did not recover for 4 or 5 weeks thereafter; on that date, June 2, 1915, the plaintiff, with her husband, the deceased, and his son Frank, went to defendant company and made application to obtain a loan on the real estate. At that time, certain papers were signed for the purpose of making a division of the property between plaintiff and her husband.. We may state here that there is testimony on behalf of defendant that the division of the property was in contemplation of a separation between plaintiff and her husband. This is denied by the plaintiff, but the evidence is, and the plaintiff herself so testifies, that thereafter they did live apart. The different instruments executed disposed of all the property of the parties, and also made provision for the payment of debts. Continuing the statement of counsel for appellant, they say that, on said 2d of June, deceased was 74 years of age, and had been sick and quite feeble for about 5 years; that he died soon afterwards, that is, the next September; that, under the plan of the division, which was carried out, plaintiff received "the home 80," the personal property, and a lease on "the hill 80" for 1915, her husband receiving "the hill 80." In addition, there were two insurance policies on Mr. Martin's life, one of which, under a subsequent arrangement, was to go to plaintiff, and one to his estate; certain debts were to be taken care of by each of the parties, giving the mortgage of $2,000 on the 80 received by each, which money

was to be turned over to defendant, to be paid out by it on these debts, and the balance, if any, to be divided equally between plaintiff and deceased. On the date before referred to, June 2, 1915, deeds were given to the defendant as trustee, by plaintiff and deceased. Exhibit 10 was a warranty deed conveying the home 80 to defendant; and on the same date (June 2, 1915), a memorandum was given by defendant to the plaintiff, by which defendant acknowledged that it held the same land in trust for plaintiff, and agreed to manage, control and convey the same as plaintiff should by will or deed direct. Soon after said June 2d, plaintiff employed Mr. Plank to look after the matter of division of property; some changes were made, and some additional papers executed; the deed, Exhibit 10 just referred to, was destroyed, and a new deed of "the home 80" made to Dwight Martin, a son of plaintiff and deceased's. We may say parenthetically here that appellee contends that the effect of this was to prevent plaintiff's husband from receiving dower in the 80 acres which went to her, in case she should predecease her husband. At the same time, June 2d, the deceased, Wilson B. Martin, and his wife, the plaintiff, executed a warranty deed to the defendant to the hill 80. In this deed, both deceased and plaintiff respectively relinquished all contingent rights, including all their right of dower, homestead or distributive share in the land so conveyed. This instrument is known in the record as Exhibit 1. At the same time, defendant gave to the deceased a writing, known in the record as Exhibit 14, which is as follows:

"Sioux City, Iowa, June 2, 1915.

"Wilson B. Martin,

"Westfield, Iowa.

"Dear Sir:

"We hereby acknowledge that we hold in trust for you the following described property, to wit: The East One

Half (E½) of the Southeast Quarter (SE¼) of Section Twenty-six (26), Township Ninety-two (92), Range Forty-nine (49), and agree to manage, control and convey the same as you shall by will or deed direct.

"Very truly yours,

"Farmers Loan & Trust Company,

"By R. H. Burton-Smith, Atty."

About 12 days thereafter, and on June 14, 1915, a trust agreement was entered into between deceased, Wilson B. Martin, and the defendant, in regard to the 80 acres of land deeded to plaintiff's husband, now deceased. This agreement is as follows:

"Trust Agreement.

"This agreement, entered into this 14th day of June, 1915, by and between Wilson B. Martin of Westfield, Plymouth County, Iowa, party of the first part, and the Farmers Loan & Trust Company of Sioux City, Woodbury County, Iowa, party of the second part,

"Witnesseth: That whereas the party of the first part has deeded to the party of the second part all his right, title and interest in the following described property to wit: The East One half (E½) of the Southeast Quarter (SE¼) of Section Twenty-six (26), Township Ninety-two (92), Range Forty-nine (49), situated in Plymouth County, Iowa, in consideration therefor the said second party agrees as follows:

"(a) To pay the net income from said property annually to said first party.

"(b) In case such net income shall not be sufficient to keep said first party in comfortable circumstances, the said second party agrees to sell said property and, from time to time, to pay over to said first party such portion of the net returns from said sale as may be necessary to the comfort of said first party, keeping balances at interest.

"(c) Whatever property or money shall remain in the

hands of the said second party upon the death of said first party, shall first be charged with the expenses of the last illness and funeral of said first party, and with a reasonable charge for the services rendered by said second party, and the said second party agrees to pay one thousand dollars ($1,000) share and share alike between Dwight Martin, Grace Waterbury Martin and Auriel Marie Martin, children by his present wife, Emma J. Martin, if such a sum shall remain in its hands, and to divide any balance equally, share and share alike, among the five children of said first party by his first wife, Mary Martin, or among their children *per stirpes*.

"Signed the 14th day of June, A. D. 1915.

"Wilson B. Martin,

"Farmers Loan & Trust Company,

"By James F. Toy,

"By F. W. Kammann."

By his will, Wilson B. Martin gave to his wife, this plaintiff, "the home 80," which had theretofore been deeded to her, and provided that such provision in his will was to be in lieu of dower, homestead exemptions and distributive share. Another provision of his will is that he makes no provision for his three children by his second wife, the plaintiff, as he expected her to provide for them out of the property set off to her. There are other provisions in the will, which we shall not set out.

On the last named date, deceased executed a bill of sale to plaintiff of certain personal property,—horses, colts, cows, hogs, machinery, grain, etc.,—being all the personal property. On that same date, the plaintiff and deceased gave to the defendant a paper, reciting that, an application having been made for a loan of $2,000, the defendant was authorized: First, to pay the usual and necessary expenses; second, to place the remaining proceeds of said loan into a common fund belonging to both of the subscribers;

third, to pay out of said fund all household, medical or
professional bills or debts heretofore contracted by either
of the parties; and the remainder to be divided equally,
one half to plaintiff and one half to her husband. A sched-
ule of notes and claims was given defendant. On the same
day, plaintiff executed a written instrument to defendant
to execute in blank and deliver to her a deed to "the home
80." On the same date, plaintiff executed to the defendant
the following paper:

"The Farmers Loan & Trust Company,

"Sioux City, Iowa.

"Gentlemen:—

"I have executed the assignment herewith delivered
to you, being an assignment of policy Number 66537, in the
Northwestern Mutual Life Insurance Company, in consid-
eration of an agreement that Wilson B. Martin shall make,
execute and deliver to you the last will or deed of trust
in which there shall be devised and bequeathed to Dwight
Martin, Grace Waterbury Martin and Auriel Marie Mar-
tin the sum of one thousand dollars ($1,000), share and
share alike in said sum of one thousand dollars ($1,000),
and, upon delivery to you of said will or deed of trust, you
may deliver to Wilson B. Martin, or anyone whom he shall
direct, the assignment hereby turned over to you."

And in another paper, she relinquished all her right
and interest as beneficiary in said insurance policy. Other
papers were executed; but it is perhaps unnecessary to set
them out, since appellant contends, and in this appellee
seems to acquiesce, that the case turns upon the three ex-
hibits before referred to; that is to say, Exhibit 10, the
deed from plaintiff and her husband to the defendant, Ex-
hibit 14, the paper in which defendant acknowledges that it
holds "the hill 80" in trust for plaintiff's husband, and Ex-
hibit 15, the trust agreement.

Appellant states that the greater part of the testimo-

ny consists of a review of the actions and consultations of the parties in fixing up a division of property between plaintiff and her husband, and that, while it establishes the fact that such a division was made, it is thought that it has no bearing on the case, which is solely a question as to whether plaintiff is entitled to dower in "the hill 80," conveyed to the defendant; and appellee concedes that the testimony introduced is important, as it bears upon the intention and purposes of the parties.   In so far as there may be any conflict in the testimony, we are satisfied with the conclusions of the trial court, and deem it unnecessary to refer to the evidence in detail, in view of the fact that the case seems to turn upon the interpretation of some of the written instruments before referred to.

Appellant's propositions are that, under Section 3366 of the Code,—which provides, in substance, that one third in value of all the legal or equitable estates in real property possessed by the husband at any time during the marriage, which have not been sold on execution or other judicial sale, and to which the wife had made no relinquishment of her right, shall be set off to her if she survive him,—plaintiff's dower interest in the real estate in controversy is not a subject of contract between her and her deceased husband; and that, therefore, her interest in the property in controversy was not divested by the division of the property between them; that such division, being a void contract, cannot be the basis of an estoppel preventing plaintiff from claiming dower in the land.   The real basis for plaintiff's claim is that, though plaintiff and her husband, on June 2, 1915, executed to the defendant the warranty deed Exhibit 10, before referred to, wherein she relinquished her dower therein, the paper thereafter and on the same day executed by defendant, or given to deceased by the defendant, acknowledging that it held the land in controversy in trust for plaintiff's husband, revested an equit-

able title in deceased which was not divested by the trust agreement thereafter executed by her husband and the defendant, the plaintiff not having joined therein.

Cases are cited by appellant in support of the different propositions, but we think the case is ruled by our holding in the case of *Manatt v. Griffith*, 147 Iowa 707, though, of course, the facts are not precisely the same. Appellant seems to place much reliance upon the case of *In re Estate of Kennedy*, 154 Iowa 460, and prior cases similar thereto. But we think the facts in the instant case are essentially different from those involved in the cases cited by appellant. In the *Kennedy* case, it was held, at page 467, that the fact was that the subject of the contract alleged was her inchoate interest in his real estate. The transaction was based upon an oral agreement between a husband and wife, whereby the wife agreed to abide by the last will and testament of her husband, in consideration of real estate and personal property conveyed to her, and in that case, the court held that, under Section 3154 of the Code, following prior cases, one spouse has no interest in property owned by husband and wife which is the subject of contract between them. In the *Kennedy* case, there was no claim, as in the *Manatt* case or in the instant case, that the transactions involved were entered into for the purpose of making a division of the property of the husband and wife, to enable them to control and dispose of their lands free from any dower right of the other therein, or that the mutual understanding and division had been acted upon by both of them.

The court was justified in finding from the evidence that plaintiff and her husband mutually agreed to a full and complete division of their property, with a view to thereafter living apart, and that they both in good faith undertook to carry out such agreement, and that it was carried out. The parties were competent to contract, and

there was no fraud perpetrated or attempted when the agreement was executed. Appellee contends that, after the deeds to defendant had been executed, on June 2d, plaintiff was trying to so arrange matters that, if plaintiff's husband should be the first to die, as it was thought he would, because of his poor health, plaintiff might claim dower in his 80; while, if she died first, he would be cut off from any interest in her 80. Nothing occurred after June 2d to indicate any change of purpose on the part of either plaintiff or her husband, or that plaintiff had any intention of departing from the original plan of a separation and division of property, as carried out on June 2d. We think that, when plaintiff and her husband, by the two separate deeds executed June 2d, conveyed all their land to defendant, they were each immediately precluded from claiming any interest in the property which it was agreed should belong to the other. The agreement and its execution, at least so far as the land was concerned, were completed when the deeds passed. The contract was fair and equitable to plaintiff. At that time, there could have been no claim that the deeds were invalid. It seems to us that whatever may have been done by either of the parties subsequent to June 2d, with respect to giving instructions or directions to defendant as to the management, control or disposition of the land, could not affect what had previously been agreed upon and executed. After the parties conveyed the lands to the trust company, their rights to their respective properties became fixed, and any arrangement thereafter made would not revest either with a title or interest in the land after they had parted with all their interest therein. This is especially so as to the land, and in all the transactions thereafter, there was no effort made to undo what had been done. Subsequent negotiations had to do more especially with the insurance policies.

It is thought by appellee that deceased could not have

been compelled to give the $1,000 to her children, since this had not been taken into consideration by either party in the earlier stages of the transaction. It is thought by appellee that, when deceased acceded to plaintiff's demand in regard to this, the question arose as to how the payment of this sum to plaintiff's children at the death of her husband was to be made. It is shown that his will had already been made, and that the parties knew of that fact, and that it did not contain a bequest of this character. True, the will could have been changed, but the parties seem to have provided for the payment of this $1,000 at Mr. Martin's death by a provision in the trust deed. That there may be a conflict between the will and the trust agreement with reference to the payment of this $1,000 need not be considered here, we think, because the question is as to plaintiff's right to dower in the land.

We think that the statement by defendant, after the execution of the deeds, to the effect that it held the husband's property in trust for him, did not have the effect of revesting plaintiff with an interest in her husband's land, of which interest she had previously divested herself by the deed. Under the authority of *Manatt v. Griffith*, supra, we think plaintiff is estopped from now asserting any dower interest in the land in controversy.

It follows, therefore, that the decree of the district court must be, and it is,—*Affirmed.*

GAYNOR, C. J., WEAVER and STEVENS, JJ., concur.