D. C. BROWNING, Trustee, Appellee, v. CHARLES KANNOW et al., Appellants.

**HUSBAND AND WIFE:** Contracts Between—Estoppel in Favor of
1 **Creditors or Trustee in Bankruptcy.** A husband who, in the sale of his land, permits a note and mortgage to be given on the land to his wife for one third of the deferred payments, and later mutually

rescinds the sale with the vendee and causes the mortgage to be released and accepts a reconveyance of the land, is estopped, as against the wife's creditors or trustee in bankruptcy, to dispute the lien and full validity of said note and mortgage, when, with the knowledge of the husband, and without objection by him, the creditors extended credit to the wife in reliance on her supposed ownership of the note and mortgage. This is true even though the note and mortgage be deemed an *invalid* attempt by the husband and wife to contract with reference to the wife's inchoate right of dower.

PAYMENT: Recovery of Payments—In General. Principle reaffirmed
2    that a voluntary payment is not recoverable by the party making it.

ESTOPPEL: Equitable Estoppel—Absence of Fraudulent Intent. Prin-
3    ciple reaffirmed that a fraudulent intent is not a necessary element of an equitable estoppel.

FRAUDULENT CONVEYANCES: Voluntary Conveyance—Presumption.
4    Principle reaffirmed that a voluntary conveyance by an insolvent is presumptively fraudulent.

Headnote 1: 19 C. J. p. 512; 21 C. J. pp. 1166, 1177. Headnote 2: 30 Cyc. p. 1298. Headnote 3: 21 C. J. p. 1122. Headnote 4: 27 C. J. pp. 500, 552.

Headnote 2: 21 R. C. L. 141. Headnote 3: 48 L. R. A. (N. S.) 768; 10 R. C. L. 692. Headnote 4: 12 R. C. L. 477.

*Appeal from Plymouth District Court.*—C. C. BRADLEY, Judge.

OCTOBER 26, 1926.

Action by a trustee in bankruptcy, to set aside, as in fraud of creditors, the cancellation of a mortgage securing a note payable to the bankrupt, as against the owner of the mortgaged premises. From a decree for plaintiff, the owner of the land appeals.—*Affirmed.*

*Keenan & Murray* and *Jepson, Struble, Anderson & Sifford,* for appellant.

*Herbert S. Martin,* for appellee.

VERMILION, J.—Prior to June 11, 1919, the appellant Charles Kannow was the owner of a quarter section of land. On that date he entered into a written contract to sell the land to

1. HUSBAND AND
WIFE: contracts
between: estop-
pel in favor of
creditors or
trustee in
bankruptcy.

one Thieson. On March 1st following, the sale was consummated by the conveyance of the land to Thieson, the payment of part of the purchase price in cash, and the execution by Thieson and wife of two notes for the balance, secured by mortgages on the land: one for $16,000, payable to the appellant, and one for $8,000, payable to Elizabeth Kannow, his wife. The latter was delivered to her.

In 1922, Thieson defaulted in the payment of interest on the mortgage debts, and proceedings to foreclose both mortgages were begun. On September 20, 1922, Thieson and wife reconveyed the land to Kannow. In the deed, the grantee, Kannow, assumed and agreed to pay the note of $8,000, secured by mortgage on the land, and held by Elizabeth Kannow, and to cancel and surrender the note for $16,000. The note for $8,000 was in fact surrendered to Thieson, and the mortgage securing it released at the time of the delivery of the deed.

On November 28, 1919, Elizabeth Kannow became indebted to O. C. Brown in the sum of $2,542.20, as surety on the note of her son by a former marriage, and on May 12, 1920, she borrowed an additional $500. On September 10, 1921, the notes in these amounts were renewed by notes signed only by Elizabeth Kannow, and an extension of time was secured. The renewal notes, remaining unpaid, were put in judgment, and the judgments are unsatisfied. Elizabeth Kannow was subsequently, upon a voluntary petition in bankruptcy, adjudicated a bankrupt by the Federal court. She scheduled no assets not exempt from execution, and no liabilities, except the judgment above mentioned, which has been established as a claim against the bankrupt estate.

The plaintiff is the trustee in bankruptcy, and brought this action to set aside the cancellation of the mortgage securing the note for $8,000, as having been made in fraud of creditors of the bankrupt mortgagee, and for judgment against the appellant Charles Kannow for the amount due thereon, and asked that such judgment be made a lien upon the land.

The answer of the appellant alleged that his wife, Elizabeth, had no means of her own, and no interest in the land conveyed to Thieson, except her inchoate interest as his spouse; that there was no consideration for making the note and mortgage for

$8,000 payable to her, but that the same were intended by the parties to evidence the dower interest that she might have in the real estate, and were so executed to her for no other purpose; that, after default by the purchaser, Thieson, it was mutually agreed that Thieson and wife would reconvey the land to Charles Kannow, and that the notes and mortgages executed by Thieson for the purchase price would be surrendered and canceled. The carrying out of this agreement in part by the release by Elizabeth Kannow of the mortgage securing the $8,000 note was alleged.

By way of reply, it was alleged that Brown, believing Elizabeth Kannow to be the unqualified and absolute owner of the note and mortgage for $8,000, with the full knowledge of Charles Kannow renewed and extended the existing indebtedness of Elizabeth Kannow and made an additional loan to her; and it was alleged that Charles Kannow was thereby estopped from claiming any benefit or advantage by reason of the cancellation of the $8,000 mortgage.

The lower court granted the relief prayed in the petition, to the extent of the amount due on Brown's judgment and the costs in the bankruptcy court, and retained jurisdiction to determine the amount of such costs.

The claim of the appellant is that the making of the note and mortgage for $8,000 payable to Elizabeth Kannow was in pursuance to, or the carrying out of, a contract in relation to the wife's interest in her husband's property, and that it was void, under Section 3154, Code of 1897 (Section 10447, Code of 1924), as construed and applied in *Shane v. McNeill*, 76 Iowa 459, and *Paup v. Shelby County St. Bank*, 195 Iowa 1213. The effect of this is to say that, since the contract or arrangement by which she acquired the apparent ownership of the note and mortgage was void, she never was in fact the owner thereof.

2. PAYMENT: recovery of payments: in general.

If, as contended by the appellee, however, the note and mortgage were made payable to her because, at the time the contract for the sale to Thieson was made, she refused to sign it unless she was given a part of the consideration, then it is clear, under our former holdings, that it was a voluntary gift to her on the part of the husband, and as such could not be recovered by him. *Garner v. Fry*, 104 Iowa 515; *Pieper v. Pieper*, 145

Iowa 373; *Kolb v. Mall,* 187 Iowa 193. In *Garner v. Fry,* supra, where the wife had refused to sign a deed of her husband's property until she was paid one half of the proceeds of the sale, we said:

"But Fry [the husband] paid this money voluntarily. While his wife took advantage of the situation, he was not compelled to convey the property. It seems well settled that, where money is voluntarily paid, with full knowledge * * *, no recovery can be had."

The evidence shows that, at the time of the execution of the contract for the sale of the land to Thieson, Elizabeth Kannow demanded that she be given a portion of the purchase price, and that it was there agreed that this should be done. There is a conflict in the testimony as to whether this arrangement was an attempt to contract with reference to her right in her husband's property, such as would bring it within the prohibition of the statute, or was merely an acquiescence in her demand, in order to secure her signature to the contract. It appears that there was at that time, or shortly thereafter, a written agreement entered into between Kannow and his wife on the subject; but the writing is not before us.

But if it should be conceded that the arrangement was such as appellant contends, and that it was void as in violation of Section 3154, there is still another, and, to our minds, insurmountable, obstacle to appellant's success.

3. ESTOPPEL: equitable estoppel: absence of fraudulent intent.

Brown was present at the time, and had knowledge of the fact that appellant agreed that the note and mortgage for $8,000 should be made payable to his wife, but had no knowledge of their agreement, other than that she would not sign the contract and deed until this was done. All of the indebtedness of Elizabeth Kannow to Brown originated thereafter, and the loan directly to her was made after the execution and delivery of the mortgage. In September, 1921, in the presence of appellant, the notes were renewed, the renewal of the note upon which Elizabeth Kannow was surety being by a note signed by her alone. At that time, appellant refused to sign the notes with his wife, and said that she would pay her own obligations. It is conceded that, aside from the note and mortgage in question, she had no money or property. There is a dispute in the testimony as to whether the

note and mortgage for $8,000 were mentioned on this occasion and in that connection. But, be that as it may, it is clear that Brown extended credit to Elizabeth Kannow in the belief that she was the owner of the note and mortgage, and that appellant must have so known. He stood by; knowing that Brown had extended credit to his wife, and was then releasing one who was obligated with her for a part of the debt, and extending the maturity of all of it, in reliance upon her ownership of the note and mortgage, and remained silent. He did not then assert the claim which he now makes, that she was not the owner of the note and mortgage, but said that she would pay her obligations, although she had no other means with which to do so.

"A fraudulent intention is not essential to the doctrine of estoppel. It is enough if a fraudulent effect would follow allowing a party to set up a claim inconsistent with his former declarations or conduct." *Helwig v. Fogelsong,* 166 Iowa 715.

Estoppel may arise from a failure to speak or assert rights on the part of one when he knows, or has reasonable ground to believe, that another is about to act in reliance upon his omission. *Kirchman v. Standard Coal Co.,* 112 Iowa 668; *McPherson v. Berry,* 92 Iowa 64; *Wright v. Dickey Co.,* 83 Iowa 464; *Helwig v. Fogelsong,* supra. The doctrine of estoppel has been applied in favor of the creditors of the husband, where a wife allowed her property to remain in the name of her husband, to whom credit was extended in reliance on his apparent ownership. *McCormick Harvesting Mach. Co. v. Perkins,* 135 Iowa 64.

There is nothing in the statute (Section 3154) that prevents, in a proper case, the application of the doctrine of estoppel. It has been frequently held that, although the contract may be within the prohibition of the statute, one of the parties to it may, by subsequent conduct, become estopped, as against a grantee of the other, to assert its invalidity. *Manatt v. Griffith,* 147 Iowa 707, and cases cited; *Martin v. Farmers L. & T. Co.,* 180 Iowa 859. See, also, note in 35 A. L. R. 1526.

Conceding the arrangement with respect to the note and mortgage for $8,000 to have been such as appellant claims, and not one made merely to secure the wife's signature to the contract of sale, we are clearly of the opinion that appellant is estopped to assert its invalidity and a consequent lack of ownership of the note and mortgage by his wife, as against Brown,

who extended credit to her in reliance upon her ownership thereof, and, to appellant's knowledge, had released a joint debtor and granted her an extension of time.

Whether it be considered that the note and mortgage are to be regarded as a gift from appellant to his wife, or that he is estopped, as against Brown, to assert the invalidity of the contract by which she acquired them, and to deny her ownership, the result is the same. In either event, she was the owner, as between her creditor and the appellant. She could, of course, except as against Brown, her creditor, do with the note and mortgage as she pleased. She could, for the benefit of appellant, when the mortgaged premises were reconveyed to him, surrender the note and cancel the mortgage; but she could not so make a voluntary disposition of them to the injury of Brown. She received no consideration for the surrender of the note and the release of the mortgage, and had no property or money remaining for the payment of her debts.

That a voluntary transfer of property by a debtor who has not sufficient money or property to pay his debts is constructively fraudulent, and will be set aside at the suit of existing creditors, is well established. *Ware v. Dela-* *haye & Purdy*, 95 Iowa 667; *Buell v. Waite*, 200 Iowa 1020. The fact that, upon the reconveyance of the land to her husband, her inchoate right therein would reattach, does not take the case out of the operation of this rule. Such fact might afford a very persuasive reason, as between them, why she should cancel the mortgage for his benefit, but it can have no force as against her creditor, who had and could acquire no right of recourse against such inchoate interest.

*4. FRAUDULENT CONVEYANCES: voluntary conveyance: presumption.*

The judgment and decree are—*Affirmed.*

DE GRAFF, C. J., and STEVENS and FAVILLE, JJ., concur.