EZRA SENSIBAR et al., Appellants, v. GORDON HUGHETT et al.,
Appellees.

No. 44852.

NOVEMBER 21, 1939.

Maurice J. Breen, for appellants.

Fred J. Keefe and James I. Dolliver, for appellees.

MILLER, J.—This is a suit in equity to collect certain cash
rent claimed from the defendant, Hughett, and to enforce a
landlord's lien against certain corn sold by Hughett to the de-
fendant Farmers Terminal Elevator Company. The answer of
the defendant Hughett consisted of a general denial and a
counterclaim. The defense of the elevator company consisted
of a plea that the plaintiffs had waived their lien and were
estopped to enforce it. The court entered decree in favor of the

plaintiffs for the rent sought and dismissed the counterclaim. Hughett has not appealed. The court denied the relief sought by plaintiffs against the elevator company. Plaintiffs appeal from this part of the court's decree.

The plaintiffs are the owners of a farm of approximately 200 acres situated near Fort Dodge. The farm was owned for many years by a Collins family. Suit was instituted to partition the property. The sale was had, plaintiffs purchased the property, and entered into possession in June, 1937.

There is situated on the farm a gypsum mine and mill operated by the Cardiff Gypsum Company under a 50-year royalty lease. The surface of the farm was leased by the Collinses to the defendant Hughett for the year March 1, 1937 to March 1, 1938. Plaintiffs acquired the property subject to such lease. It was an oral lease, pursuant to which Hughett agreed to pay as rent one half the corn, two fifths the oats, $100 in cash for the pasture and to shell the corn.

The plaintiff Sensibar is the president, and the plaintiff Breen is the vice-president of the Cardiff Gypsum Company, and the two of them own a controlling interest in the corporation. Sensibar is a nonresident. Breen is practicing law at Fort Dodge. Francis Scott is the mine superintendent for the Cardiff Gypsum Company, and one Loomer is the plant manager. In November, 1937, when Hughett undertook to pick the corn on the place, Scott was notified by Breen to take charge of the division of the corn and to see that the plaintiffs got their share. The corn was picked by a mechanical corn picker and the arrangement between Scott and Hughett was that every other load of corn was to be placed in a crib on the farm, and was to constitute the landlord's share. This arrangement was carried out satisfactorily. Scott testified that he was looking after Breen's interests. He saw Hughett haul his share of the corn away from the place in the direction of the elevator, but was not interested and made no objection.

G. L. Spike, the manager of the defendant Farmers Terminal Elevator Company, testified that he purchased 598 bushels of corn from Hughett, of which 491 bushels came from the plaintiffs' farm. He advanced Hughett $100 on the corn, then, after some of it had been delivered, paid him an additional $100. When all of it had been delivered, he paid the balance of $27.

After the first load of corn was delivered, Spike called the mill of the Cardiff Gypsum Company. He did not know with whom he talked. According to Scott, it must have been the plant manager, Loomer. According to Spike, he called the mill and told them that Hughett was hauling in corn and asked if it all belonged to Hughett or was to be divided and they said they had their man dividing the corn in the field.

At the close of the evidence, the elevator company moved for a dismissal of the petition as to it, for the reason that it affirmatively appeared in the record that the plaintiffs had knowledge of the sale of the corn by Hughett before the full purchase price was paid to Hughett, made no objection thereto, and failed to notify the elevator company of plaintiffs' lien so that plaintiffs are estopped from demanding payment from the elevator company. The court found in favor of the elevator company. The only question presented for our decision is whether or not the court erred in so holding.

The landlord's lien which plaintiffs seek to enforce arises by virtue of the provisions of section 10261 of the Code. Since this suit was commenced in February, 1938, the suit was timely, in accordance with the provisions of section 10262 of the Code. In the early case of Holden v. Cox, 60 Iowa 449, 15 N. W. 269, this court recognized that the statutory landlord's lien is not divested by a sale of the crops by the tenant, but the landlord may follow the crops into the hands of the purchaser and, if he has disposed of them, he will be liable to the landlord in damages. This decision is cited with approval in the case of Wilson v. Fortune, 209 Iowa 810, 811, 229 N. W. 190, 191, 67 A. L. R. 1075, wherein we state:

"The law in this state is settled that a landlord whose lien has been destroyed or lost by reason of the sale of the property by the tenant may maintain an action against the purchaser for conversion unless he has waived, or is estopped from asserting, his lien. Blake v. Counselman & Co., 95 Iowa 219; Holden v. Cox, 60 Iowa 449; Scallan v. Wait, 64 Iowa 705; Rew v. Maynes, 147 Iowa 15. * * * Waiver or estoppel is an affirmative defense, the burden of proving which is on defendant."

In the case of Wright v. E. M. Dickey Co., 83 Iowa 464, 50 N. W. 206, this court held that, where a landlord has a lien on the crops for the rent of the farm, but permits the crops to

be harvested and carried to market and there sold to a purchaser without notifying the purchaser of his lien, the landlord is estopped from asserting any claim to the crops sold as against such purchaser. This case was cited with approval in the case of Strasberger v. Farmers Elevator Co., 184 Iowa 66, 69, 167 N. W. 184, wherein this court approved an instruction which advised the jury that, in an action to enforce a landlord's lien against the purchaser of hogs sold by the tenant, upon which the landlord had a lien, if the agent for the landlord knew of or consented to the selling of the hogs, or if, after the hogs were sold and before they were paid for, he made no objection thereto and failed to notify the purchaser of the landlord's lien, then the landlord would be estopped from demanding payment from the purchaser.

In the case of Fishbaugh v. Spunaugle, 118 Iowa 337, 341, 92 N. W. 58, 60, this court states:

"It is a settled doctrine that the principal is bound not only by acts of his agent within the express limit of his instructions, but is also bound to the extent of the apparent authority conferred upon such agent."

In that case, a landlord sought to enforce his lien against the purchaser of grain from the tenant. Certain special interrogatories were submitted to the jury upon which the jury reported that the landlord's agent knew that the tenant was selling corn covered by the lien to the purchaser, authorized the tenant to sell and deliver the corn, but that the purchaser was not induced to purchase the corn by any knowledge or information of any act on the part of the agent, and that the agent had no authority to waive the lien. There was a general verdict for the defendant. On appeal, the plaintiff contended that the answers to the special interrogatories were fatal to the general verdict. This court held that, notwithstanding the fact that plaintiff's argument was plausible, the general verdict should stand, this court holding that it was not necessary that the agent should have express authority to release the corn in order to bind the landlord, that the agent may in fact have no authority and yet if, under all the circumstances, his consent to the sale of the corn was within the apparent scope of the power given him by the landlord, then the latter will be bound by

such consent and the lien will be held to have been relinquished as against the purchaser.

Under the record herein, Scott, as agent for the plaintiff, had no express authority to waive the lien or to consent to the sale of the corn by Hughett. However, Scott admitted that he knew Hughett was hauling the corn to the elevator. He made no objection. He was not interested. The arrangement which Breen made with Scott was such that, when Spike called the mill to report that Hughett was selling the corn to him and to inquire whether it was Hughett's corn, whoever answered the telephone was justified in assuming that Scott was protecting the plaintiffs' interest in the corn, and that it was proper for Hughett to sell it to Spike. The answer which was given to Spike justified Spike in believing that it was safe for him to buy the corn from Hughett. At the time that this conversation took place, there was more than enough money unpaid to protect the plaintiffs' lien. Had Spike been advised of the plaintiffs' lien, the plaintiffs could have been protected.

In the case of Wright v. E. M. Dickey Co., supra, in holding that the landlord could not enforce his lien against the purchaser of the crops, we state, 83 Iowa at page 468, 50 N. W. at page 206:

"It is a familiar principle that, where one of two innocent parties must suffer for the wrongful act of another, the one who rendered the wrongful act possible must bear the burden."

The circumstances shown by the record herein were sufficient to justify the trial court in determining that, as between the elevator company and the plaintiffs, the plaintiffs, rather than the elevator company, rendered the wrongful act of Hughett possible, and should be the ones to suffer on account of it. We are not disposed to disturb this finding of the court.

The decree is affirmed.—Affirmed.

OLIVER, C. J., and HAMILTON, SAGER, BLISS, HALE, and RICHARDS, JJ., concur.