WM. L. ALLEN, Plaintiff and Appellee, v. J. A. ADAMS, Defendant and Appellant.

**Real property:** CONTRACTS: FORFEITURE. By the express provisions of the statute a contract for the purchase or sale of real property cannot be forfeited for non performance, until thirty days after the time fixed for performance and after giving notice of forfeiture.

**Same:** RESCISSION. Where a purchaser of real property continued the contract in force, knowing that the vendor was taking steps to clear objections to the title and that he was expecting to perform as soon as the title was perfected, his attempted rescission when the vendor was ready, able and willing to perform, and when he was tendering performance came too late.

**Same.** Where the purchaser of land entered into possession under his contract and made improvements, a tender of possession to the vendor coupled with a demand for payment of the value of the improvements was not such a tender as would warrant rescission.

**Real property:** CONTRACTS: FRAUD: EVIDENCE. In this action for the price of land sold on contract the evidence is held insufficient to show that plaintiff falsely represented that he held the legal title at the time the contract was made.

**Same:** RESCISSION. Where defendant went into possession of real property under a contract of purchase, the fact that plaintiff did not have the legal title at the time he took possession was not ground for rescission after plaintiff had acquired such title: and by taking possession defendant acquired an equitable title to the land and he could not refuse payment of the purchase price for alleged lack of title in the vendor, unless he rescinded the contract and restored possession.

*Appeal from Humboldt District Court.*—HON. A. D. BAILIE, Judge.

SATURDAY, NOVEMBER 22, 1913.

AN ACTION to recover the purchase price of land sold by

plaintiff to defendant by written contract. The defendant
admitted the execution of the contract but denied timely per-
formance by the plaintiff. By way of counterclaim he
pleaded: (1) That the contract was obtained by false repre-
sentations; and (2) that the plaintiff defaulted in performance
on the date fixed by the contract and that by reason thereof
the defendant rescinded the contract. He prayed to recover
back the money paid by him before default and the amount of
certain expense incurred. There was a judgment for the
plaintiff and the defendant appeals.—*Affirmed.*

*Lovrien & Lovrien,* and *Healy & Healy,* for appellant.

*John Cunningham,* and *Kelleher & O'Connor,* for ap-
pellee.

EVANS, J.—On September 15, 1911, the parties hereto
entered into a written contract whereby the plaintiff pur-
ported to sell and the defendant to buy about 47.96 acres of
land for an agreed price of $5,995. Of such sum $500 was
paid at the time of the execution of the contract. The bal-
ance of the purchase price was to be paid April 1, 1912, and
a proper deed was to be executed by the plaintiff to defendant
at the same time. It was further provided that the defendant
should have possession March 1, 1912. The contract con-
tained the following provisions:

Now, if the said party of the second part shall pay to
the party of the first part the balance of said purchase price
as set forth below, on the following dates, to wit:

| Date Payable. | Principal. | Interest. | Total. |
|---|---|---|---|
| April 1, 1912 | $5,495.00 | No. | |

.   .   .   .   .   .   .   .   .   .   .

With interest at no per cent. per annum, payable annu-
ally, as above, and shall pay all taxes and assessments before
they become delinquent, which may be levied or become
due on said real estate from and after the date hereof, the

said party of the first part will, at his own cost and expense, execute and deliver to said party of the second part, or to his assigns, a warranty deed and abstract showing good title and free from all liens and incumbrances, including taxes for 1911 to the above described premises on April 1, 1912. Principal and interest payable at People's State Bank, Humboldt, Iowa. It is agreed by the parties hereto that, in case any payment of principal or interest remains unpaid for the space of thirty days after the same become due, the whole amount remaining unpaid on this contract shall (after the lapse of said thirty days) become due and payable without notice, time being the essence of this contract, and in such case all moneys paid to said first party shall be retained by him as liquidated damages, and this contract may be declared null and void at the option of the said first party.

The land involved was a part of a larger tract recently purchased by plaintiff by written contract from one Dodd, a neighbor of the defendant. Plaintiff's contract with Dodd also called for a conveyance by Dodd to plaintiff on April 1, 1912, and possession to plaintiff on March 1, 1912. On April 1st the defendant was ready to perform the contract. The abstract of title, however, which had been presented to plaintiff by Dodd, indicated some slight defects which the plaintiff desired should be cleared by Dodd before the consummation of the transaction. This required the obtaining of an affidavit for the purpose of some identification and of a release of the land from a certain mortgage which covered such land and other lands. Such release had been arranged for prior to April 1st, but it had not actually come to hand. In all other respects plaintiff was ready to perform his contracts both with Dodd and with the defendant. A few days were requisite for obtaining the papers referred to. They were obtained within four days and placed of record. And thereafter no obstacle remained to the full performance of the contract sued on. The defense is based upon the following general proposition: (1) That time was of the essence of the contract, and that the plaintiff was bound to perform upon the very date agreed

upon, April 1, 1912. (2) That the defendant tendered full performance on such date and demanded his deed and the plaintiff failed to perform. (3) That on such date, or within a reasonable time thereafter, the defendant rescinded such contract because of plaintiff's default.

I. As to the first proposition, plaintiff urges that it is not available to the defendant in that such provision of the contract, as to time being the essence thereof, only purports to be for the benefit of the plaintiff vendor.

1. REAL PROPERTY: contracts: forfeiture.

The right of forfeiture is expressly put to the 'option of the said first party.'' There are authorities which tend at least to support the plaintiff's position and to construe such a clause in particular cases as applying only to the time of payment of purchase-money installments and as for the benefit of the vendor alone. *Zunkel v. Colson,* 109 Iowa, 695-697; *Van Vranken v. Railroad Co.,* 55 Iowa, 135, 138, 139; *Sigler v. Wick,* 45 Iowa, 690, 692; *McClartey v. Gokey,* 31 Iowa, 505; *Vorwerk v. Nolte,* 87 Cal. 236 (25 Pac. 412); *Newton v. Hull,* 90 Cal. 487 (27 Pac. 429); *Scott v. Glenn,* 98 Cal. 168 (32 Pac. 983). There is some force in appellant's suggestion that such a provision ought to be deemed mutual and that it should be applied alike to both parties. Even so, however, it would not avail the defendant herein. By the terms of this particular contract, as well as by the statute (Code, sections 4299, 4300), the right of forfeiture would not be available even to the plaintiff until thirty days after written notice. Because of other features of the case which are quite conclusive against the defendant, we need not determine whether the cases above cited necessarily control the construction of the present contract.

Assuming for the purpose of the discussion that the defendant was entitled to rescind his contract on April 1, 1912, because of the default of the plaintiff on that date, the evidence fails to show any act or declaration on the part of the defendant advising the plaintiff of his election to rescind. In his conversation with the

2. SAME: rescission.

plaintiff on that day he declared his readiness to perform. Later in the day, and in the absence of the plaintiff, he went to the People's Bank, where the contract was payable, and made formal tender of the purchase price. As a witness he testified in explanation of this procedure that he did it to keep his contract ''good.'' After the formal tender by the defendant at the bank, the plaintiff was advised thereof by phone. He sought out the defendant and asked him the reason for such formality. According to plaintiff's testimony the defendant then replied that he did it to ''protect his contract.'' The evidence is practically undisputed that there was no attempted rescission on that day. It rested with the defendant at this point to elect whether he would rescind or not. Until he should advise the plaintiff of his election to rescind, the plaintiff was bound by the contract. As long as the plaintiff was bound by the contract, the defendant was bound likewise. He could not rescind without terminating the contract as to both parties. Neither could he continue the contract in force, as against the plaintiff, without also being bound by it himself. The trial court found that the defendant not only failed to rescind on April 1st but that he clearly indicated to the plaintiff in his conversation with him that he was intending to hold him to his contract. We think this finding was justified by the testimony.

A person was designated by the defendant to whom the plaintiff should deliver the abstract for final examination after the objections to the title had been met. The defendant as a witness denied this in a qualified way, but an examination of all the evidence satisfies us with the finding of the trial court. From a careful examination of the testimony we are impressed that the defendant was not wholly candid in some of his denials and qualifications. On April 5th or 6th the abstract was finally approved by the examiner designated by the defendant. On April 6th the plaintiff called the defendant by phone and advised him that everything was ready and that the deed and abstract were on deposit for him at the People's

State Bank. The following is the defendant's version as a witness of what transpired at that time:

He called me up over the telephone and told me that the abstract and deed were now ready. That was about the 6th of April. I was at home then. I told him I didn't think I would do anything more about the deal. He wanted to know what was the trouble. I told him I had got tired of monkeying around so long. I had spent part of April 1st with him. I hadn't seen him from that day until the time he called me up over the phone. I told him then for the first time that I wouldn't go ahead with the contract. That was the first time that I had told him that. He said he was ready to settle up then, and I told him that I didn't believe I would do anything more about it. He wanted to know when I would be down again, and I told him I would be down Monday. He wanted to know what was the trouble. I says, 'You was too anxious for the money and you couldn't produce the abstract and deed.' I told him he wanted me to perform and he couldn't perform. He said, 'You know why I wanted the money.' I told him I didn't know anything about that, and I couldn't help that, and that the contract called for an abstract and deed and for me to pay the money. He said he had ought to have got around a little sooner to get them, but he was busy. He asked me when I would be down, and I told him I thought I would be down Monday. I think that was all that was said then. I told him that I wouldn't do anything more with the contract. I made no offers to him that day on the telephone of any kind. I told him that I didn't believe that I would do anything more under the contract. I think that is the way I said it.

The foregoing was the first suggestion ever made by the defendant of a possible election to rescind. In pursuance of an appointment, the parties met on April 9th, and the plaintiff made formal tender to the defendant of a proper deed and abstract which the defendant then refused to receive. The defendant also made formal tender to the plaintiff of a surrender and rescission of the contract on condition that the

plaintiff repay him the $500 purchase money previously paid, and that he pay him the further sum of $200 for labor and expense incurred by the defendant upon the premises while he held possession thereof. It is in dispute between the parties whether he tendered a formal surrender' of the possession on that day. In the light of all the circumstances, we think it ought to be found that the surrender of the possession was offered on the same condition as the cancellation of the contract.

The sum of the situation is that the defendant continued the contract in force while knowing that the plaintiff was taking steps to clear objections to the title and while knowing that the plaintiff was expecting to perform his contract as soon as such objections could be cleared and within a few days, and that he evinced no intent to rescind until after all objections were cleared and the plaintiff was ready, willing, and able to perform. Having held the plaintiff bound to the contract after default until the plaintiff was ready, willing, and able to perform and until he was tendering performance, the defendant could not meet such tender by a change of front and by a notice of rescission. The attempted rescission came too late.

II. There is another feature of the case which is quite conclusive against the attempted rescission by the defendant. His offer to surrender the contract and the possession of the land was conditioned that the plaintiff should not 3. SAME. only repay him the $500 purchase money previously paid but that the plaintiff should pay him the further sum of $200 for alleged labor and expense upon the premises. The defendant had been in possession since March 1st. His contract required him to erect a certain partition fence between the land purchased and the remainder of the farm from which it was separated. We may assume that, if the defendant was entitled to rescind, he was entitled to demand compensation for labor and expense incurred in pursuance of the contract. Under the testimony of the defendant, his labor and expense did not approximate the sum of $200. The item

was included in his counterclaim except that only $150 was claimed therein. His testimony disclosed that the labor and expense incurred amounted to less even than $150. His demand upon plaintiff, therefore, for $200 as a condition to the surrender of the possession and of the contract was not justified, and his tender upon such condition avails him nothing.

III. The defendant pleaded that the plaintiff had falsely represented to him that he held the legal title to the property and that he was induced thereby to enter into the contract sued on, and some contention is made in argument along the same line. The evidence does not sustain the contention. The defendant was a neighbor of Dodd and understood that Dodd had sold his farm to the plaintiff. When this contract was made, the defendant learned from the plaintiff that April 1, 1912, was to be the date of the settlement with Dodd. This was the reason why the same date was adopted in defendant's contract with plaintiff. The defendant himself testified that some time prior to April 1st the plaintiff had requested him to pay or deposit the purchase money in advance in order that the plaintiff might use the same in settlement with Dodd. There was no fraud practiced upon the defendant in the respect claimed.

4. REAL PROP-
ERTY: con-
tracts: fraud:
evidence.

IV. It is urged, however, that the contract in suit was an undertaking on the part of the plaintiff that he would procure title in himself on or before April 1st and that his failure to do so destroyed the mutuality of the contract and rendered it nonenforceable by him. If this argument were conceded, it could only establish a right of rescission in the defendant on the ground indicated. Inasmuch as he did not rescind while mutuality was lacking, the argument is not available. There is a further reason why this contention is not available to the defendant. The defendant was in the undisputed possession of the land purchased. He had attained his

5. SAME:
rescission.

possession from the plaintiff through the contract. As between plaintiff and Dodd, the plaintiff was the equitable owner in possession. It is the general rule that a vendee in undisputed possession of the purchased real estate cannot refuse payment of the purchase price for alleged lack of title in the vendor unless he rescind the contract and restore possession to the vendor. *Allen v. Pegram,* 16 Iowa, 163; *Ormsby v. Graham,* 123 Iowa, 209; *Worley v. Nethercott,* 91 Cal. 512 (27 Pac. 767, 25 Am. St. Rep. 209, 211); *Rhorer v. Bila,* 83 Cal. 54 (23 Pac. 274); *Young v. Figg,* 72 Neb. 271 (100 N. W. 311); *McLeod v. Barnum,* 121 Cal. 605 (63 Pac. 924, 925, 926). The application of this rule, therefore, gave to the defendant only the right of rescission, and it availed him nothing while he continued to hold the plaintiff to the obligations of the contract.

The trial court properly awarded judgment to the plaintiff, and such judgment is accordingly *Affirmed.*

WEAVER, C. J., and LADD and PRESTON, JJ., concur.