J. A. BARNETT, Appellant, v. EFFIE DOTY, Appellee.

**SPECIFIC PERFORMANCE: Good Faith—Fraud and Collusion.** Fraud and deception on the part of plaintiff in obtaining the contract necessarily defeats a prayer for specific performance.

*Appeal from Linn District Court.*—JOHN T. MOFFIT, Judge.

APRIL 1, 1924.

SUIT in equity for specific performance of a contract for the exchange of lands. The defendant denied certain material allegations of the petition. She also set up an affirmative defense and cross-petition alleging that her signature was obtained by false and fraudulent representations. There was a decree for the defendant. The plaintiff appeals.—*Affirmed.*

*Carl F. Jordan,* for appellant.

*Crissman & Linville,* for appellee.

EVANS, J.—The plaintiff was the owner of certain residence lots in Cedar Rapids. The defendant was the owner of unincumbered acreage property, comprising seventeen acres, in the same city. She was a widow, of limited business experience. She listed her property with the real estate agent for sale or exchange. Shortly thereafter, her agent, Dennstedt, sought her signature to the acceptance of a written proposition formulated and signed by the plaintiff. Such writing is known in the record as Exhibit A, and is as follows:

> "Cedar Rapids, Iowa,
> "November 22, 1922.

"I hereby offer C. A. Dennstedt, Agent, Lots 1 and 2, Block 37, Young's Fifth Addition to the city of Cedar Rapids, Iowa. Said described property incumbered to the amount of $3,769.00 in exchange for 17.60 acres located in the northeast quarter (NE¼) of the northeast quarter (NE¼) of Section 32, Township 83, Range 6, Linn County, Iowa, and $200.00 cash. Said 17.60 acres to be deeded clear of incumbrance. The above proposition is good and binding upon me if accepted on or before the 27th day of November, 1922.

> "[Signed]    J. A. Barnett.

"ACCEPTED

"[Signed]    Mrs. Effie Doty.

> "Dated this 23rd day of November, 1922."

Such agent made to the defendant certain very material representations of fact, upon which she relied. The defendant signed the acceptance on November 23, 1922. On December 2d, she was called to the office of her agent, and there signed a supplemental agreement, known in the record as Exhibit B, which was as follows:

"This agreement is supplementary to a certain agreement dated November 22, 1922, by and between J. A. Barnett and Mrs. Effie Doty, pertaining to certain exchange of properties. Now, then, it is hereby agreed that each party to said contract referred to, have this day executed and delivered warranty deed

to their respective properties which is part of the fulfillment of the above referred to contract and said deeds are to be held in escrow by the Dennstedt Realty Company and to be turned over to the respective parties upon they performing the balance of the agreement and furnish merchantable abstract showing title per agreement. It is hereby agreed that upon each party furnishing said abstract the Dennstedt Realty Company is thereupon hereby authorized to turn over and deliver to the respective parties the deed they are entitled to under the above referred agreement. It is further agreed that on January 1st, 1923, each party hereto will pay the 1922 taxes on their respective properties they have deeded to the other party.''

Immediately thereafter, she discovered the falsity of the representations upon which she had relied. Whereupon, she immediately notified the plaintiff, and sought rescission of the contract. The representations made to her by Dennstedt were: That the incumbrance upon plaintiff's property was a single mortgage, payable in monthly installments, on the amortization plan usually followed by building and loan associations; that the property was rented for $35 a month; that such rental would pay the monthly installments required by the mortgage, and in substance that the mortgage would not become due in any other manner than by the maturing of the successive monthly installments. The real facts were that there were two mortgages upon the property. The first was for $3,000, dated December 19, 1921, and was payable in monthly installments of $21 per month, plus accrued interest to date. The other mortgage was for $1,000, dated December 20, 1921, and due in one year from date, with 6 per cent interest. The plaintiff's property was not rented at $35 per month; nor was it rented at all at that time, but was unoccupied. That the alleged representations were made to the defendant and relied on by her, and that they were not true, and that the facts were as here stated, is all substantially without dispute. The point made by the appellant is that these representations were not made by him nor by his agent, and that, if the defendant was deceived, she was so deceived by her own agent, whether intentionally or otherwise. If the defendant was induced to sign the agreement by the fraudulent representations of her own agent, whose interest in an earned commission was in

a measure adverse to her, we are not prepared to say that a court of equity would be thereby forbidden to extend relief to her, as against even an innocent party, who had not changed his *status quo*. But we shall not predicate decision upon that ground. The agent was a witness, and his testimony is very unsatisfactory. Apparently he attempted to testify to the satisfaction of both parties. He was called by defendant, and on direct examination testified, in substance, that he made the representations complained of while he himself believed them to be true, and that such belief was predicated wholly upon the information which had been given him by the plaintiff and his agent. On cross-examination, he gave the plaintiff and his agent a clean bill of health, and testified that they made no statement to him that was not consistent with the written proposition submitted to the defendant, and that what they said was substantially the same thing as appeared in such written proposition; and that the specific representations made by him to the defendant were predicated in part upon his own inferences from a reading of such written proposition. The testimony of this witness places him in a very unfavorable light, upon this record. He faces the alternative of having been either deceived himself, or incompetent, or dishonest with his principal. The plaintiff himself was not called as a witness. His agent testified that he made none of the alleged representations. He admits, however, that he told the defendant's agent that the property *would* rent for $35.

We turn, therefore, from the oral testimony to a consideration of the instruments themselves that were before the parties. Exhibit A was presumptively formulated by the plaintiff. It had been signed by him when presented to the defendant. It will be noted that the incumbrance is described therein as "$3,769." This description of the incumbrance carried an air of exactness that was suggestive of a single instrument of that exact amount. The incumbrances were not of that exact total, though they were approximately such. On December 2d, the supplemental agreement was signed. On that day, the defendant deposited her check in escrow for $200, and likewise her deed. On the same day, the plaintiff deposited his deed in escrow. Abstracts were to be brought to date and tendered

later. Plaintiff's deed, which was deposited in escrow, purported to except from the covenants of warranty *mortgages aggregating $4,000.* This is the only deed which the plaintiff has ever tendered in performance of the contract. This reservation is not only a clear departure from the terms of the executory contract, sufficient of itself to defeat the suit for specific performance, but is also a very suggestive circumstance disclosing plaintiff's own consciousness of the misleading character of the description adopted by him in the written proposition. If plaintiff believed that the description of incumbrance included by him in his written proposition was adequate, it would have been equally adequate for the purpose of the covenants of warranty. The stated amount, "$3,769," was the result of computation. The $3,000 mortgage called for monthly installments of $21 a month. These were presumed to have been paid for eleven months (though there was no actual testimony to that effect), and these would amount to $231. This reduced that mortgage to $2,769. But the other mortgage bore 6 per cent interest from date, and would fall due on the ensuing December 20th, both principal and interest, in a total amount of $1,060. Therefore, the reservation made by plaintiff in his tendered deed would impose an obligation upon the defendant at least $60 greater than the amount stated in the written proposition. The circumstance became significant in another respect. This deed was presented to and deposited with the defendant's agent in escrow. He raised no objection or question as to this provision of the deed and as to its departure from the contract. It disclosed to him that there was more than one mortgage. He knew what representations he had made to his principal, and knew that she relied upon his representations. The fact that the plaintiff inserted this provision in violation of his contract, and that the defendant's agent acquiesced therein without objection, is a circumstance tending to show collusion between them. Furthermore, it appears that, on this same occasion, when the defendant deposited her deed in escrow, she deposited likewise in escrow her check for $200. The plaintiff was no more entitled to the delivery of this check before the full performance of the contract, as contemplated, than he was to a delivery of the defendant's deed. But the agent, without the knowledge or consent

of his principal, immediately delivered this check to the plaintiff. So that, though the defendant made a quick discovery of the facts concealed from her, immediately following the deposit in escrow, and gave immediate notice of her discovery and of her repudiation of her contract, yet her agent had already anticipated her by the delivery of her check out of escrow. This circumstance also tended to show collusion between the agent and the plaintiff. At what point of time the collusion had its origin is a matter only of inference, in the light of all the circumstances. In view of the fact that the later collusion fitted consistently with the original concealment of material facts by the form of the original offer, and with the representations made by the agent to his principal when he obtained her signature to the acceptance thereof, the inference is quite unavoidable that the collusion permeated the entire negotiations. Whether such collusion was between defendant's agent and the plaintiff himself, or was one between the two agents, is not material, for the purpose of this case. Moreover, the reservation of the deed deposited in escrow by the plaintiff was itself a breach of the contract, and as such is effective to defeat specific performance at the suit of plaintiff.

We have no occasion, therefore, to consider other questions pertaining to the failure of the plaintiff to prove the completion of an abstract showing merchantable title and a failure to tender such. We reach the conclusion that the trial court properly entered its decree for the defendant, and its decree is, accordingly, affirmed.—*Affirmed*.

ARTHUR, C. J., PRESTON and FAVILLE, JJ., concur.