CITY OF DES MOINES, Appellant, v. JAMES HORRABIN, Appellee.

MUNICIPAL CORPORATIONS: Public Improvements—Modification of Contract Without Competitive Bidding. A city which has so breached a valid paving contract that the contractor is under no duty to perform, may, without submitting the matter to competitive bidding, validly contract in good faith with the contractor for a reasonably enlarged compensation (to be paid from the general fund) as a consideration for the performance of the contract notwithstanding the breach; and the execution of the contract on such basis is beyond attack.

Headnote 1: 28 Cyc. pp. 1026, 1048 (Anno.), 1057.

Headnote 1: 19 R. C. L. 1072.

*Appeal from Polk District Court.*—O. S. FRANKLIN, Judge.

NOVEMBER 15, 1927.

Action at law by the city of Des Moines in its corporate capacity, to recover the sum of $9,582.62, with interest, alleged to have been wrongfully paid by the city to the defendant-contractor. The opinion states the material facts. Upon the conclusion of all the testimony, the court, on motion of the defendant, directed a verdict for the defendant, and entered judgment accordingly. The plaintiff city appeals.—*Affirmed.*

*Reson S. Jones, Eskil C. Carlson, Chauncey A. Weaver, Don G. Allen,* and *George W. Vest,* for appellant.

*Miller, Kelly, Shuttleworth & McManus,* for appellee.

DE GRAFF, J.—This suit involves the right of the city of Des Moines to recover moneys which it is alleged were wrongfully paid by said city from the general fund to the defendant,

a contractor, in excess of the contract price for paving improvements under the special assessment plan. The facts are not in dispute.

It appears that, on May 28, 1917, the defendant entered into a written contract with the city of Des Moines for the paving of Ingersoll Avenue from Seventeenth Street to Twenty-eighth Street. No question arises as to the regularity or the legality of the letting of this contract. It is unchallenged that there was no attempted performance of the contract until after May 24, 1919. The terminal date for completion of the work was fixed by the contract "on or before the 15th day of July, 1917, unless otherwise provided in writing signed by the mayor and approved by the city council of the city of Des Moines."

There is no dispute in the record as to the cause on the part of the contractor in failing to commence the performance of the work contemplated by the contract prior to the time he commenced its performance. It is admitted that it was the duty of the city to reduce Ingersoll Avenue to grade before the pavement was laid, and it is shown that the city did not so do until late in the fall of 1918. It is also shown that the city had contracts with other contractors to curb and gutter this street, and that, before the defendant could perform his contract, the curbing and guttering must be completed, and that the latter work could not be done until the city had completed the grading. The curbing and guttering were not completed until July, 1919.

It is further shown that this part of Ingersoll Avenue had thereon a double street-car track, which had to be brought to grade by the city railway company. This work could not be performed until the city reduced the street to grade, nor could the pavement under the original contract with the instant defendant be constructed until the street-car tracks were placed on a permanent grade, which was not done until the summer of 1919. These were the impediments to the performance of the work by the defendant-contractor, and were matters entirely outside the jurisdiction of the defendant-contractor. It was the failure of the city to do the grading which caused the delay of the contractor in the instant matter. He was in no wise at fault.

It is conceded that, during the period of two years from May, 1917, to May, 1919, the defendant-contractor stood ready

to perform this contract, but had been prevented by reason of the conditions hereinbefore stated. In May, 1919, the city asked the contractor to proceed with the work, but he refused, on the ground that he was not further legally bound, under the contract of May 28, 1917, and that the city had prevented performance, and could not now compel it. The city admitted, at that time, that the claimed right of the contractor was well based, and, in substance, conceded that the contract was voidable at the option of the contractor, and that he had a valid reason for refusing to perform the same.

Under the original contract, the price fixed therein for the construction of the pavement was $2.36 per square yard, which represented at that time the fair and reasonable value of the work to be performed. Due to the change in general economic conditions between May, 1917, and May, 1919, the cost of labor and material materially increased; and in May, 1919, it is conceded of record, $2.90 per square yard represented the fair and reasonable cost of construction of this pavement.

It is further shown that, after the defendant-contractor had negotiations with Mr. John Budd, the superintendent of the department of streets and public improvements, it was agreed that, if the contractor would proceed with the work, he should be paid $2.90 per square yard for the construction of the pavement. The entire matter was presented to the city council in open session, and the negotiations were approved, as evidenced by a written contract, known in this record as ''Exhibit A'' of defendant's answer.

On May 24, 1919, the city council unanimously passed a resolution approving the supplemental contract, and in this contract reference is made to the original contract between the city and the defendant-contractor, and it is recited therein that, since the letting of the original contract, conditions have changed, and the construction of said improvement prevented, making it necessary to postpone from time to time said work, without the fault of either the property owner, contractor, or city, and it is also recited that, ''whereas the contractor has agreed to waive any defense or legal objection that might be urged against the performance of said contract and has agreed to secure waiver of any objections thereto by sureties on his bond,'' therefore the city agrees to pay to the contractor such sum, in addition to

that named in the original contract, either in cash or valid obligations of the city of Des Moines, bearing 6 per cent interest, as will make the total sum paid the contractor, including the special assessment bonds, $2.90 per square yard for the number of square yards contained in the original contract. The contractor then did file with the city a consent on the part of his sureties on his original bond, and proceeded immediately to the performance of the work. The work was completed on September 3, 1919, and accepted by the city. On November 22, 1919, the city settled with the contractor in full for the work.

It is shown that the yardage was computed on the original basis of $2.36 per square yard, and this amount was assessed against private property. The amount due by reason of the supplemental contract was computed at $9,582.62, which sum was paid to the contractor from the general funds, under special resolution of the city council. No echo of this matter was heard until the filing of the petition in this cause, on December 20, 1923.

It is clear, under the record facts, that the contractor had the right, in the first instance, to insist that the city had breached the contract, and that he was released from the contract. This release was recognized by the city. It is true that the performance of a valid contract is no consideration for an increase in the price agreed to be paid therefor, but this is not the controlling principle in the case at bar. Here, the city broke an express condition of the original contract, and, having recognized the breach, agreed to give the contractor additional compensation if he would disregard the breach and perform the contract. This constituted a new or additional consideration.

"As where one party to a contract has by his acts so delayed the other party in the performance of his part of the contract that he is not legally bound to complete the contract within the stipulated time, and thereupon the former promises him extra pay if he will complete the contract within such time, and he so promises and performs, the promise of extra pay is supported by a valid consideration." 1 Elliott on Contracts 370, Section 216.

The instant record is plain that the city recognized, at the time of the making of the supplementary contract, that the

contractor had a complete defense to the original contract, and could not have been compelled, under the then existing conditions, to go ahead with the original contract. The record is clear that the delay in the performance of the original contract was due to the failure of the city to do the grading. It is immaterial what caused this delay on the part of the city. We are not dealing with that line of cases involving a building contract where unforeseen difficulties have been encountered by the contractor and additional compensation is demanded before proceeding with construction. We reach the conclusion that it was competent for the parties to make a new contract, unless the city was precluded by express provision of statute.

It is the contention of the appellant city that a contract for street improvements, without competitive bids, is void, and the case of *Atkinson v. City of Webster City*, 177 Iowa 659, is cited.

Is the supplemental contract in question within the statute that provides that all contracts for the construction of street improvements shall be let in the name of the city to the lowest bidder by sealed proposals upon given notice by newspaper publication in the manner prescribed? Section 6004, Code of 1924. It must be admitted that, in order to assess the cost of a public improvement against private property, the statute requiring the contract to be let on competitive bids must be respected. Property owners in the case at bar are not involved, and as to them the statute was respected.

The city has authority to improve a street and pay the costs out of the general fund or the highway or poll-tax fund, and if it decided to do this, no competitive bids were necessary. *First Nat. Bank v. City of Emmetsburg*, 157 Iowa 555; *Humboldt County v. Incorporated Town of Dakota City*, 197 Iowa 457.

A municipal corporation has two classes of powers: One, legislative, public, and governmental; the other, proprietary, quasi private, or business. In the exercise of powers under the second class, and in all transactions arising thereunder, the municipality is governed by the same rules that apply to private individuals or corporations. *First Nat. Bank v. City of Emmetsburg*, supra.

There is no charge of fraud or unfair dealing in this case, and it is not disputed that all parties acted in the best faith.

Furthermore, it may be observed that the city of Des Moines has accepted the benefits of the supplemental contract and still retains them. As a matter of fact, it cannot place the appellee *in statu quo.* There is a strong morality in this case. It is both good law and good morals that a person cannot retain the benefits of a transaction and escape payment of the agreed consideration. A municipality must be held to the rule of honest dealings when its act relates to the business powers of the city, as distinguished from its governmental powers. As said in *Humboldt County v. Incorporated Town of Dakota City,* supra:

"If the town can escape payment, it must be for the reason that the pleaded agreement is contrary to law. * * * If a town has a legal right to make a contract, and the other parties to the contract have acted thereon, the town cannot escape payment, where there is a lawful means by which payment can be made."

In the instant case, the making of a supplemental contract constituted a settlement and discharge of the controversy then existing between the city of Des Moines and the defendant-contractor. The city had the right to compromise, settle, and adjust differences arising over contracts which it had the right to make in the first instance. See *Mills County v. B. & M. R. R. Co.,* 47 Iowa 66.

The city did, to avoid trouble and litigation, and to secure the fulfillment of a contract which the contractor was under no obligation to perform, make the supplemental agreement, in good faith. It was approved in due form by the legally constituted authority. It had lawful authority to pay the difference, under the circumstances, in the manner that it proposed to pay, and it is not now privileged to repudiate the settlement and recover what it paid for the work performed by the defendant and accepted by the city. Neither a court of law nor a court of equity will interfere in such a case to deprive either party of money or property acquired under a fully executed good-faith contract. See *Miller v. City of Des Moines,* 143 Iowa 409.

For the reasons indicated, the judgment entered by the trial court is—*Affirmed.*

EVANS, C. J., and ALBERT, MORLING, and WAGNER, JJ., concur.