W. E. STALY, Appellee, v. EVA ESTHER MCNERNEY, Appellant; WALTER FERGUSON, Intervener, Appellee.

No. 46276.

JULY 27, 1943.

REHEARING DENIED SEPTEMBER 27, 1943.

Clarence I. Spencer and Everette Brown, both of Des Moines, for appellant.

James W. Hall and Norman Huyck, both of Des Moines, for plaintiff-appellee.

Ed R. Brown, of Des Moines, for intervener-appellee.

HALE, J.—Mrs. Eva Esther McNerney, the defendant, is the widow of William Thomas McNerney, who died October 12, 1940. Decedent in his will devised to her a ninety-acre farm in Polk county, south of Des Moines. The farm originally consisted of one hundred and thirty acres, of which the south forty acres were devised to a son. Plaintiff, W. E. Staly, was the owner under contract from Westons of two houses situated on one lot and known as 1111 and 1113 Pennsylvania Avenue, in Des Moines, and deed therefor from the Westons to Staly, of date February 11, 1942, was recorded February 13, 1942.

Final report in the estate of William Thomas McNerney filed March 19, 1942, and the supplemental final report, filed April 13, 1942, were approved on the same day. While proceedings in the estate were pending, and about June 1941, Mrs. McNerney employed L. E. Gooding to dispose of the ninety-acre farm devised to her. Gooding died before the institution of this suit. Gooding first talked to J. O. Staly with reference to town property in trade for the farm and through J. O. Staly came into contact with Staly's son, W. E. Staly, the plaintiff herein, who was at that time a resident of Webster City. On June 26, 1941, W. E. Staly came to Des Moines and went to his father's house. On the same day Gooding, the agent, called for defendant, and after first driving past the houses on Pennsylvania Avenue, showed her some houses located near the fairgrounds. Defendant was not interested in the latter houses and was then taken by the agent to the residence of J. O. Staly, and defendant, Gooding, and J. O. Staly went to the Pennsylvania Avenue houses and defendant inspected them. Apparently all parties were satisfied to make the exchange, and the agent Gooding and the defendant then proceeded with the plaintiff to the office of defendant's attorney, Clarence I. Spencer, where contract was executed between plaintiff and defendant by which Mrs. McNerney agreed to exchange the ninety-acre farm for the Pennsylvania Avenue houses and $750, $500 of which was paid on the execution of the contract and the balance of $250 to be paid on March 1, 1942, with deeds to be executed on that date. The contract contained the usual provisions that the properties were to be free from liens and encumbrances, and

taxes paid by each owner, and that the time of payment of the sum of money, interest, and taxes was the essence of the contract, and in default of compliance the agreement should be void and of no effect.

Out of the fund received by defendant as down payment she paid the agent Gooding his commission on the day following execution of the contract.

On June 27th, through Gooding, acting as his agent, W. E. Staly, by his father, J. O. Staly, sold to Walter Ferguson, the intervener herein, the ninety acres for which he had contracted with Mrs. McNerney. The sale of the farm was known to the defendant, and later, in the month of July, she permitted Ferguson to make improvements on the farm, paint the buildings, and in consideration of the sum of $25 gave him the keys to the house and sold him the stalk pasture. From that time on Ferguson looked after the place and made various improvements of about $1,000 in value, according to his own testimony.

Later there was some question by the various attorneys as to the title to the different properties and the abstracts were finally exchanged in February 1942. On March 1, 1942, defendant took possession of the two houses she had contracted to buy from Staly, but was, or became, dissatisfied, claiming that the agent had misinformed her about the value of the properties and their rental. She claimed she had been informed their rental was $30 per month for each house, but actually each house was rented for $20 per month. However, she collected the rent from the tenants from March 1, 1942, up until the time of the trial.

On April 16, 1942, dissatisfied with the contract, Mrs. McNerney served on the plaintiff, W. E. Staly, a notice that she rescinded the contract of June 26, 1941, and in writing offered and tendered the $500 received and to restore the status quo, alleging as a reason, failure and lack of consideration and fraud and misrepresentation. The intervener, Walter Ferguson, in his contract of June 27, 1941, had agreed to pay $5,000 for the property, of which he paid $500 in cash and the balance to be paid upon execution of warranty deed and delivery of abstract on March 1, 1942. On April 23, 1942, plaintiff filed

a petition reciting the terms of the contract and offering to pay the balance of $250 to defendant and asking that title be quieted in him and demanding delivery of the warranty deed and abstract. In an amendment to his petition plaintiff set out the fact of defendant's entry into possession, her knowledge of the sale to Ferguson and her permission to Ferguson to take possession of the farm and make improvements thereon, and claimed estoppel. On June 6, 1942, Ferguson filed petition of intervention and to this defendant filed answer claiming fraud, misrepresentation by plaintiff through his agent, who was acting for both parties, and so great a difference in the value of the properties contracted to be exchanged that the contract was unconscionable. She alleged failure to deliver abstract by Staly showing merchantable title and failure of defendant to discover fraud until March 1942, and set up the rescission above referred to with tender. Defendant also filed a cross-petition against plaintiff and Ferguson, intervener, on substantially the same grounds. Answer to the cross-petition, by way of denial and claim for damages, was filed by intervener, further pleading ratification and estoppel of defendant. Answers by the plaintiff to the intervener's petition and amendments, and reply by way of denial on the part of defendant, were also filed.

On September 24, 1942, the cause came on for trial, and on October 13, 1942, the court rendered its decree setting out the execution of the contract and finding as follows: That if there had been fraud upon defendant she was in a position to discover such fraud but was not diligent and did not investigate, although she had sufficient opportunity for a long period of time after she had entered into the contract, and did not do so until on and after the settlement date and after the relations between the plaintiff and intervener had been materially changed; that she had no cause or right to rescind the contract and did not tender to plaintiff or intervener restitution of consideration already paid or expended by intervener for improvements made with the knowledge and consent of defendant; that there was no fraud on the part of Ferguson and that defendant knew of the existence of the contract between plaintiff and intervener

before the intervener made expensive repairs on the ninety-acre farm and made no objection, but consented to and permitted the intervener to make such improvements; that the fair and reasonable value of the real estate owned by defendant is $50 per acre and that the consideration for the purchase of the real estate was not unconscionable, and although plaintiff and intervener were ready, willing, and able to perform the terms of the contracts they were prevented by defendant's failure to perform; that the equities of the cause were with the plaintiff as between plaintiff and defendant, and that plaintiff was entitled to specific performance and defendant's cross-petition should be dismissed. The decree required defendant to ́pay the taxes, deliver abstract of title showing merchantable title, ·deliver warranty deed, and pay the costs, and in event of her failure authorized plaintiff to expend such amounts and deduct them from the $250 still owing defendant. The court found that the equities were for the intervener, Walter Ferguson, against plaintiff and defendant, and that he was entitled to subrogation of all the rights of plaintiff and entitled to specific performance; that Staly was the absolute owner of the ninety acres in controversy on the 1st day of March 1942, and entitled to a lien of $4,500 against such property to secure the balance of the purchase price from Ferguson, and that Ferguson was the owner of said ninety acres subject to such lien; that the title be quieted to the ninety acres in the intervener against plaintiff and defendant; and appointed the clerk as commissioner to execute deeds in the event of failure on the part of defendant to do so.

From this decree defendant appeals to this court.

I. Defendant alleges that there can be no specific performance in this action for the reason that plaintiff did not have title to the property which he agreed to deliver, and that such fact was unknown to the defendant. The deed to plaintiff from the Westons was executed February 11, 1942, and in addition to that, an abstract of title was submitted to and examined by defendant's attorney on February 23, 1942. Moreover, the plaintiff was the equitable owner in possession, and under the terms of the contract between plaintiff and defendant transfer was not to be made until March 1, 1942, at which time plaintiff

was the owner of record. This would be no ground for rescission. See Allen v. Adams, 162 Iowa 300, 143 N. W. 1092.

II. Defendant argues that the consideration in this case is so inadequate that specific performance will not be decreed. This is the most disputed question in the case. On the question of value a large number of witnesses were examined. As to be expected, and as usual in such cases, the estimates of the value of the properties varied greatly. Three of defendant's witnesses fixed the value of the farm at from $80 to $90 per acre. Their testimony was in the main unsatisfactory, both from the point of view of experience and knowledge of land values, as well as acquaintance with the land in question. Two other witnesses fixed the value at $75 to $80 per acre, but these also were not men of extensive experience as to valuations. Plaintiff's witnesses fixed the value of the land as of the date of the contract at about $50 per acre. There was not so much variation in the value fixed by defendant's witnesses on the town property; according to their testimony their estimates as of the date of the contract ranged from $1,100 to $1,300 for each house. This testimony was given mainly by real-estate dealers of varying degrees of experience. A valuation of $1,800 for each house, as of June 26, 1941, was given by one of plaintiff's witnesses, who from his testimony was apparently well qualified to fix such value, and he further testified that the one hundred per cent valuation for tax purposes for both houses was something over $4,000. Another of plaintiff's witnesses fixed the value at from $1,750 to $1,800 apiece as of that date. The purchase price paid by plaintiff for the two houses was $2,500 but there was testimony that considerable improvements aggregating $900 had been made on the houses. Notwithstanding this, and assuming that the price fixed by defendant's witnesses was $2,600, which is considerably lower than that fixed by witnesses for plaintiff, the value of the houses with the improvements, plus the $750 to be paid in cash, would make $4,250 as the purchase price for the farm, leaving out of consideration any question of an increase in value between the time of purchase by plaintiff and the time of sale. We are not inclined to place the exaggerated value on the farm that

defendant's witnesses fixed, but agree with the court that the fair and reasonable value of the farm at the time of sale was $50 per acre and that the consideration for the purchase of the real estate as set forth in the contract was not unconscionable but was fair to the defendant.

Under this holding it is unnecessary to review the cases cited by defendant as to unconscionable contracts, as our holding as to the facts does not indicate the contract to have been such. That the sale of the farm may not have been wise for the defendant under the circumstances, nor the purchase of town property to her best interest, may be true, but from a comparison of the properties it is apparent that the market value of the properties did not differ to any such great extent as to render the transaction fraudulent.

III. Defendant argues that the court will not decree specific performance of a contract for the sale or exchange of real estate when the execution of such contract is obtained by false or fraudulent representations. (Citing cases.) There can be no dispute that this proposition is a correct statement of the law. We have examined the record, however, and from the testimony are not inclined to hold that there was such fraudulent representation. There is testimony of the defendant, disputed, that the houses were said to be rented for $30 each per month and that the value of each house was about $3,000; that there was a full basement under each house; and that the houses were each on a forty-foot lot. It is not claimed, and it is not a fact, that such representations were made to defendant by plaintiff, and, if made at all, were made by one Gooding, the agent, and it was upon his representations, if any, she claims she was induced to sign the contract. As we have heretofore stated, she was first shown other houses near the fairgrounds and then inspected the town property in question. She had opportunity to, and did, examine the property. The contract was made in the office of her own attorney and written by such attorney. Defendant's testimony regarding the representations as to rent is entirely uncorroborated and is further disputed by the testimony of J. O. Staly, father of plaintiff, and Mrs. Mary Hay, a tenant of one of the houses, who both testified that on examina-

tion of the property prior to the execution of the contract Staly told defendant that the houses were rented for $20 each.

In this connection defendant argues that specific performance of a fraudulently induced contract will be denied, even though the material representations are made by the party's own agent, if it appears that the agent is in collusion with the other contracting party. The difficulty about this proposition is that, as above indicated, the evidence does not bear out defendant's claim of fraudulent representations. In order to void her contract it would be necessary that she show not only the collusion, but the fraud. Defendant cites Barnett v. Doty, 197 Iowa 647, 197 N. W. 996, as showing evidence indicating collusion. The cases differ widely as to the facts. In the Barnett case there were material misrepresentations of fact, not only as to rental value but as to the encumbrance upon the property, and gross violation of instructions in the delivery of a check. The most serious complaint made by defendant against her agent here seems to be grounded on the fact that the sale of the property by defendant's grantee to Ferguson, intervener herein, was made at practically the same time as the other sale. As we understand it, defendant's agent was employed for the purpose of disposing of the farm, and in order to complete that transaction it was necessary that there be a sale of plaintiff's property. Each sale was dependent upon the other. To procure the purchaser for the farm it was necessary that there be a sale of his town property. This action was known to the defendant in ample time to ask for rescission if she had so desired. She knew prior to March 1, 1942, not only the character of the property for which she had contracted but of the sale to Ferguson. We are satisfied from the evidence that the defendant knew throughout the summer and fall of 1941, not only of the farm sale but that Gooding himself was responsible for it, and yet no protest was made nor any question raised until the spring of 1942. No doubt Gooding was desirous of obtaining two commissions, but also, as we have said, the purchase and sale of the farm were contingent upon the sale of the town property. We find no evidence of such collusion as would of itself render the transaction void. See Barnett v. Doty, supra.

IV. Assuming, as claimed by defendant, that Gooding was acting as the agent of both parties, and assuming that this

was without the knowledge of either or both of the principals, then in that case, the contract would be voidable, or, if ratified with full knowledge, is binding. We may therefore assume, without so holding, that there was an agency for both parties unknown to the defendant, and yet, as we have heretofore stated, and as shown by the evidence, the sale to Ferguson seemed to be, and was, satisfactory to the defendant; she not only gave him the keys to the house but sold him the stalk pasture and saw the improvements which he was making on the premises and made no objections thereto. During that period and later the transaction was apparently satisfactory to her and she made no complaint about the property nor evinced any inclination to rescind until April 16, 1942, nearly ten months after the execution of the contract. Plaintiff and intervener plead, and we think establish, estoppel. By her actions we are satisfied that defendant, with knowledge, ratified the transaction, and by permitting intervener to make valuable and expensive improvements on the farm she has been estopped. See McPherson v. Berry, 92 Iowa 64, 60 N. W. 241; Helwig v. Fogelsong, 166 Iowa 715, 148 N. W. 990; Kirchman v. Standard Coal Co., 112 Iowa 668, 84 N. W. 939, 52 L. R. A. 318; Martin v. Farmers L. & T. Co., 180 Iowa 859, 163 N. W. 361, 7 A. L. R. 238; Wright v. E. M. Dickey Co., 83 Iowa 464, 50 N. W. 206; and Browning v. Kannow, 202 Iowa 465, 210 N. W. 596.

■ V. While we have assumed in the foregoing division, for the purpose of discussion, that defendant could have rescinded, yet we do not hold that under the evidence she could have done so. Defendant has at no time made any attempt to restore the status quo. She not only took possession of the town property but has continued to hold it and collect the rent thereon. While on April 16, 1942, she did serve a notice of rescission, she has never refused to accept, nor attempted to turn back the property or to perform that which was in her power, nor evinced her intention and ability, by any specific act, to rescind. See Messenbrink v. Bliesman, 204 Iowa 223, 215 N. W. 232; City of Des Moines v. Horrabin, 204 Iowa 683, 215 N. W. 967. It has frequently been held by this and other courts that one who desires to rescind must not only restore the parties to their status

quo but must move promptly, and failure to act with reasonable promptness would indicate a ratification. Not only is defendant charged with such knowledge as was acquired by her during the summer and fall of 1941, but she had full knowledge of the facts between March 1, 1942, and April 16, 1942, the date of her notice of rescission. And she further continued to, and did, ratify the contract by continuing in possession of the Pennsylvania Avenue properties and collecting the rents therefrom. In Moore v. Howe, 115 Iowa 62, 65, 87 N. W. 750, 751, the court says:

"A party to an agreement induced by fraud or deceit is held to the duty of electing either to execute or rescind the contract at the time of discovering the wrong, or within a reasonable time thereafter.  *  *  *  Taking any benefit or changing the condition of the property bought after learning of the fraud has been adjudged a waiver of the right to rescind."

See, also, Barnes v. Century Savings Bank, 165 Iowa 141, 174, 144 N. W. 367, 380, wherein the court quoted from Grymes v. Sanders, 93 U. S. 55, 62, 23 L. Ed. 798, as follows:

" 'If he be silent, and continue to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract, as if the mistake or fraud had not occurred. He is not permitted to play fast and loose. Delay and vacillation are fatal to the right which had before subsisted.' "

See, also, Allen v. Adams, supra.

Under all the circumstances, and for the reasons given above, we must hold that the defendant is bound by her contract and that her attempted rescission is unavailing.

VI. Other objections are made, including objections to testimony, which we deem it unnecessary to consider. Defendant argues that equity will deny specific performance of a real-estate contract in an instance where there is a combination of objections, none of which alone would be sufficient for such denial. As an abstract proposition, there is no doubt this is true if the record discloses a series of objections, the cumulative effect of which might be sufficient to require the court to refuse specific performance, but we do not so find in the present case.

1076

■ There is further objection that the remedy of specific performance lies within the equitable discretion of the court. This is also true. But such discretion should be a sound legal discretion and not an arbitrary refusal of this equitable remedy. Cases cited by defendant all tend to establish a general rule that if the result of the enforcement of the contract should be inequitable and contrary to good conscience, the court, under certain circumstances, would be justified in refusing the remedy. We do not think that in this case, where one party has become dissatisfied, but has not presented such equitable grounds as would authorize a refusal, it was the duty of the court to deny such relief.

The district court has disposed of the equities to which the various parties are entitled, and their various rights under these contracts, in a manner we think is fair, and the decree of that court therefore is affirmed.—Affirmed.

MULRONEY, C. J., and MILLER, SMITH, BLISS, MANTZ, WENNERSTRUM, and OLIVER, JJ., concur.